SUSAN M. CHEHARDY, Judge.
|2On Mai’ch 27, 2008, Carlos R. Hernandez was indicted by the Jefferson Parish Grand Jury for violation of La. R.S. 14:42, aggravated rape of a juvenile male, date of birth June 15, 1996. The defendant was arraigned the next day and entered a plea of not guilty. He filed a motion to suppress statement, which was denied on February 19, 2009. On September 10, 2009, the trial judge ruled that evidence of prior sexual offenses committed by the defendant would be admissible at trial. The indictment was amended on March 4 and March 8, 2010, to change the dates the offenses occurred. The trial judge subsequently granted the State’s motions in li-mine prohibiting the defendant from introducing evidence of the victims’ prior sexual conduct.
The case was tried on June 1 through June 4, 2010, before a 12-member jury, which found the defendant guilty as charged. The defendant filed a motion for new trial on June 17, 2010, which was denied that same day. The defendant waived sentencing delays and the trial judge sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[1] The defendant filed a timely motion for appeal that was granted.
RFACTS
K.A.[2]
The victim, K.A., was 13 years old at the time of trial. He testified that when he was 11 years old, he took a trip with his biological father. When K.A. returned, he learned that neighbors had called the police claiming that the defendant, his stepfather, had touched them children inappropriately. K.A. then told his mother, F.A., that the defendant had raped him once when he was five or six years old. During that incident, the defendant told K.A. to take off his clothes and get on the bed. Afterward, the defendant took off his clothes and “stuck his penis” in K.A.’s “butt.”
K.A. believed this incident occurred when he was five or six years old, because he recalled at the time that he rode the bus to school with “little people,” and that he was a “little person” at that time. He did not tell anyone what happened at that time because he was afraid and he thought the defendant would hurt his mother. The defendant also told K.A. not to tell anyone and that he would get in trouble if he told.
*619 At some point prior to trial, KA. admitted to an employee of the district attorney’s office, James Thomas, that the defendant had raped him “a number of times,” and that he had waited a long time to make those additional allegations because he was embarrassed. K.A testified that the incidents occurred between the ages of seven to eleven, in their apartment on Holmes Boulevard and at their residence on Helen Street.[3]
K.A. then recalled an incident when they lived on Helen Street. At that time, K.A.’s mother left the house, and the defendant told K.A. to take off his 14clothes and lie on the sofa. Afterward, the defendant took off his clothes and then “stuck his penis” in K.A.’s “butt.” When the defendant was finished, the defendant removed his penis and went to wash it. KA. recalled that when he was in first and second grade, his mother worked outside the home, and that when she was away, the defendant would take care of him. F.A. (K.A.’s mother) and W.A. (KA.’s brother) also recalled that the defendant took care of K.A. when F.A. was not home.
On January 6, 2008, Deputy Donald Cannatella of the Jefferson Parish Sheriffs Office was dispatched to Helen Street in response to a complaint of aggravated rape. At that time, Deputy Cannatella met with F.A. and K.A., and he learned from K.A. that the defendant had put his penis in K.A.’s “butt” five years prior. Deputy Cannatella notified his supervisor and the detective bureau and turned over the investigation to Detective Balser. Detective Balser, in turn, contacted Detective Kay Horne after learning that Detective Horne had investigated other incidents involving the defendant. F.A., K.A., and W.A. subsequently went to the detective bureau and met with Detective Horne. At that time, Detective Horne learned from K.A. that the defendant stuck his “private up [K.A.’s] butt” one time.
Afterward, K.A. was referred to the Children’s Advocacy Center, where he was interviewed by Erika Dupepe on January 17, 2008, regarding the allegations against the defendant. That interview was recorded and shown to the jury. Following that interview, K.A. was examined on January 28, 2008, by Dr. Jameka Head at Children’s Hospital. At that time, K.A. complained of one instance of penile-anal contact by his stepfather, the defendant, six or seven years prior, and said that his stepfather had told him not to tell anybody.
|sDr. Adrienne Atzemis, Dr. Head’s supervisor, testified that K.A.’s examination was overall within normal limits except he had redness around his bottom that was nonspecific for abuse. She further testified that the lack of findings was not a problem. Dr. Atzemis explained that the anus can stretch to the point of injury, but that it can heal very quickly with no scarring. She also explained that children commonly do not disclose sexual abuse immediately for many reasons, including not knowing it is wrong, embarrassment, fear, feeling responsible for it, protecting family members, threats, and positive reinforcements. Lastly, Dr. Atzemis testified that disclosure commonly starts with one incident and later includes others.
The State also presented evidence that the defendant committed other crimes of a sexual nature involving L.P., J.W., and J.A.

L.P. and J.W.

L.P. and J.W., who were nine years old at the time of trial, used to go to the *620 defendant’s house to eat dinner and to get money from the defendant to spend on candy. On the night before Christmas, when L.P. was seven years old, she went to the defendant’s house. While she was there, the defendant put his hands in her panties and “wiggled around” with his finger. Shortly thereafter, J.W. went to the defendant’s house to get L.P. When she arrived, L.P. was sitting on the defendant’s lap. After J.W. told L.P. that her father was looking for her, the defendant pulled J.W. on his lap and then touched her inside her pants on her “private part” where she “goes to the bathroom,” and moved his hand around. L.P. and J.W. then went and told their mothers, who called the police. When J.W.’s mother confronted the defendant immediately after the incident, the defendant repeatedly said the girls were no longer allowed at his house.
IfiL.P. and J.W. later spoke to the police, and they were interviewed by Erika Du-pepe of the Children’s Advocacy Center on January 7, 2008. Those interviews were videotaped and shown to the jury. L.P. and J.W. were also examined at Children’s Hospital by Dr. Atzemis on January 11, 2008, and Dr. Atzemis testified that there were no abnormal findings and no expectations of any. It is noted that when Detective Horne (who was in plain clothes) and Deputy Howard (who was in uniform) went to the defendant’s house to speak to him about the allegations involving L.P. and J.W., before Detective Horne could introduce herself, the defendant blurted out, “I didn’t touch those babies, I love babies.”

J.A.

J.A., who was ten years old at the time of trial, testified that the defendant used to live with her grandmother, F.A., and that K.A. was her uncle. When she was seven or eight years old, she went to visit her grandmother. While J.A. was in K.A.’s room watching K.A. play video games, the defendant came in, sat down, and told her to sit on his lap. After she did so, the defendant stuck his hand inside of her panties and touched her on her “private part” “where she goes to the bathroom.”[4]
A couple of days later, J.A. told her mother what happened. J.A. later spoke to the police and was interviewed by Erika Dupepe at the Children’s Advocacy Center on January 11, 2008. That interview was videotaped and shown to the jury. J.A. was also examined at Children’s Hospital by Dr. Head on January 30, 2008. Dr. Atzemis testified that Dr. Head’s examination revealed no abnormalities, which she did not find unusual.
After the State rested its ease, the defense called Antonio Fuentes as a witness. Fuentes testified that he had known the defendant for many years and saw | 7him occasionally. He further testified that the defendant was a “decent person,” who was “always very gentle, well spoken, and a nice person.”
ASSIGNMENT OF ERROR NUMBER ONE
It was error to admit the other crimes evidence detailing alleged sexual abuse again [sic] J, L, and J2 as that evidence was overwhelmingly prejudicial and probative of nothing at issue in the charge at trial.
In this assignment the defendant argues that the trial judge erred by admitting evidence of other crimes involving alleged sexual abuse. He contends that the other crimes' evidence was so extensive, detailed, *621 and prejudicial as to have obliterated any chance for a fair trial. He asks this Court to reverse the conviction and remand for a new trial.
The State responds that the evidence was admissible as res gestae to explain the sequence of events leading to the defendant’s arrest. The State further responds that the evidence was also admissible to show the defendant’s lustful disposition toward children under La. C.E. art. 412.2. Alternatively, the State contends that any error was harmless in light of the strong evidence against the defendant.
On July 7, 2008, the State filed a notice of intent to use evidence of other or similar crimes, pursuant to La. C.E. art. 404(B) and 412.2. On August 21, 2009, the State filed a notice of intent to introduce evidence of similar crimes in sex offense cases pursuant to La. C.E. art. 412.2 or, alternatively, pursuant to La. C.E. art. 404(B). On September 10, 2009, the trial judge granted those motions, finding that the State could introduce evidence of other sexual offenses committed by the defendant to show lustful disposition toward six- and seven-year-old minors, and to show motive and opportunity.
La. C.E. art. 412.2 provides,
|sWhen an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
La. C.E. art. 403 provides: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” Regarding the proper balancing between the probative value of evidence and its prejudicial effect required by Article 403, the Louisiana Supreme Court has explained:
Any inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree. As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. The term “unfair prejudice,” as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. [Citations omitted.]
State v. Rose, 06-0402, p. 13 (La.2/22/07), 949 So.2d 1236,1244.
A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. State v. Cosey, 97-2020, p. 13 (La.11/28/00), 779 So.2d 675, 684, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001).
In State v. Harris, 11-253 (La.App. 5 Cir. 12/28/11), 83 So.3d 269,[5] the defendant was indicted for the aggravated rape of a juvenile male. At trial, the judge admitted evidence that the defendant had also raped a ten-year-old girl, even though the defendant was acquitted of that crime. On appeal, this Court found that Inevidence of *622 the prior rape of a juvenile was highly relevant to show the defendant’s lustful disposition towards children, noting that there were similarities between the victims and conduct in both cases. This Court also found there was no showing that the jury was misled or confused or that too much time was consumed by the volume and presentation of the other sexual crime evidence, even though the defendant claimed that more than half of the testimony pertained to the other sexual crime. In addition, this Court noted that the trial court gave a limiting instruction before and after the testimony by the victim of the prior offense, and in its final instruction. In sum, this Court concluded that the probative value of the other sexual offense evidence outweighed the danger of unfaii* prejudice to the defendant and, therefore, under La. C.E. art. 412.2 the trial court did not err in admitting the evidence of the other sexual crime incident.
In the instant case, the State introduced evidence that showed K.A., the victim in the instant case, was five or six years old when the defendant first raped him. The State also introduced evidence that showed the defendant sexually abused two neighborhood girls and one girl who was his step-granddaughter when they were approximately seven years old.
We find that the other crimes evidence was relevant to show that the defendant had a lustful disposition toward children approximately seven years old who were relatives who lived with him or visited him or neighbors who visited him.
We also find that the probative value of the other crimes evidence was not substantially outweighed by unfair prejudice, confusion, undue delay, or waste of time. With respect to the volume of other crimes evidence, because the State contended the defendant committed three other crimes, there was necessarily more testimony regarding the other crimes evidence than the crime for which the | indefendant was standing trial. We find that the trial judge did not err by allowing the State to present this evidence, since the State had to prove that the defendant committed the other crimes.
With respect to the order of witnesses, the State first presented Deputy Cannatel-la to testify regarding the instant offense. Afterward, Detective Horne testified regarding all four incidents. Next, there were three witnesses who testified as to the instant offense, and then three witnesses who testified regarding the other incidents. Following that testimony, Erika Dupepe of the Children’s Advocacy Center testified regarding her interviews with all four victims, after which James Thomas of the D.A.’s Office testified regarding the instant offense. Dr. Atzemis subsequently testified regarding the examinations of all four victims at Children’s Hospital, and then the mothers of two of the victims of the other incidents testified. Although the other sexual crimes evidence seemingly was presented out of order, there is nothing in the record to indicate that the jury was confused or that the defendant was prejudiced by the volume or presentation of that evidence.
Further, the trial judge instructed the jury that the other crimes evidence was presented only for a limited purpose, as follows:
Evidence that the defendant was involved in the commission of an offense other than the offense for which he is charged is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show guilty knowledge, absence of mistake or accident, intent, system, motive, identity and/or to show a lustful disposition towards chil *623 dren. Remember, the accused is on trial only for the offense charged. You may not find him guilty of the offense charged merely because he may have committed another offense.
In light of the foregoing, we find that the trial court did not err by admitting other crimes evidence. We find no merit to this assignment.
| ^ASSIGNMENT OF ERROR NUMBER TWO
The trial court repeatedly admitted into evidence wholly inadmissible and extremely prejudicial hearsay despite the objections of trial counsel.
In this assignment the defendant argues that the trial judge erred by overruling his hearsay objections and admitting portions of the investigating officers’ testimony into evidence at trial.[6]
The State responds that the trial judge did not abuse his discretion because the statements were admissible as res gestae. The State further responds that any error would be harmless, considering the strong evidence against the defendant and the cumulative nature of the hearsay statements. Lastly, the State notes that defense counsel did not request any admonitions and that some of the alleged trial errors were not preserved for appellate review because no hearsay objections were made.
On appeal, the defendant references several instances of alleged hearsay statements that were allowed into evidence through testimony of Deputy Cannatella and Detective Horne.
The prosecutor asked Deputy Can-natella questions regarding what he had learned after speaking to W.A. and F.A. Deputy Cannatella answered, “They informed me that when [K.A.] returned home from Mexico, his mother asked [K.A.] — .” Defense counsel objected on the basis of hearsay. The trial judge told the witness not to tell them what somebody else told him. Afterward, Cannatella testified that K.A. told his mother that the defendant had touched him inappropriately. Defense counsel objected on the basis of hearsay, and the prosecutor said she would rephrase the question.
| ^Shortly thereafter, the prosecutor asked Cannatella what he learned about K.A. and the defendant through his investigation, and the deputy responded that K.A. said his stepfather had touched him inappropriately. The prosecutor asked Cannatella what he learned through his meeting with K.A., and the deputy replied that he learned that five years ago, defendant put his penis in K.A.’s butt. Defense counsel did not lodge contemporaneous objections to those questions.
Later on, the prosecutor asked Detective Horne what she learned from L.P.’s mother. Horne testified, “Her mother advised that — ,” after which defense counsel lodged a hearsay objection. The trial judge told the detective to ensure that her response was not a hearsay one, and not to say what someone else told her. Horne then testified, “The mother disclosed to me that her daughter had informed her that something happened.” Defense counsel lodged another hearsay objection, which the trial judge sustained. The prosecutor subsequently asked the detective what she had learned from L.P.’s mother, and *624 Horne replied, “That her child was sexually abused” by the defendant. There was no objection by defense counsel to that question.
Afterward, the prosecutor asked Detective Horne what she learned from L.P. Horne began to respond what she had disclosed to her, but defense counsel objected, and the trial judge told Horne to rephrase her answer so it was not hearsay. Horne then testified that she learned from L.P. that L.P. had been sexually abused by her neighbor, Mr. Carlos. Horne also learned from L.P. that L.P. had gone to a neighbor’s house to get money for candy, and that when she went there, Mr. Carlos grabbed her, placed her on his lap, stuck his hand down her pants, and rubbed his hand on her vagina.
11sLater on, the prosecutor asked Horne what she had learned from J.W., and Horne testified she learned that when J.W. got to the defendant’s house, she saw that L.P. was on the defendant’s lap. Horne also testified she learned from J.W. that the defendant grabbed J.W., placed her on the arm of the chair, put his hand down her pants, and that J.W. struggled and screamed and a hand was placed over her mouth. There were no objections to the questions asking Detective Horne what she had learned.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801. Hearsay evidence is not admissible except as otherwise specified in the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La.1984). Although a statement may constitute inadmissible hearsay, if the statement is merely cumulative or corroborative of other evidence, the admission of the evidence is harmless error. State v. Hester, 99-426, p. 17 (La.App. 5 Cir. 9/28/99), 746 So.2d 95,107, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
A law enforcement officer may testify about information provided by another individual without it constituting hearsay if it is offered to explain the course of the police investigation and the steps leading to the defendant’s arrest. State v. Addison, 05-378, p. 12 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 892, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36. However, an officer cannot testify that he acted on information obtained during the investigation as an indirect method of introducing the substance of out-of-court assertions of the defendant’sJjjguilt that would otherwise be barred by the hearsay rule. Addison, 05-378 at 12-13, 920 So.2d at 892-93.
We find that the defendant is precluded from raising those alleged trial errors listed above to which his trial counsel failed to lodge contemporaneous objections. La. C.Cr.P. art. 841. It appears that defense counsel chose not to object whenever the prosecutor asked the deputy what he had learned from the witnesses.
 With respect to the other alleged trial errors that are properly before us, we agree that Detective Horne’s responses as to what she learned from W.A., F.A., K.A., L.P., and J.W. were hearsay. Although those answers explained the course of the investigation, it appears they were actually offered to prove the truth of the matter asserted, ie., that the defendant sexually abused the victims. Nevertheless, we find that any errors were harmless because Horne’s testimony was cumulative or corroborative of other evidence. Hester, su- *625 pm. The record shows that K.A., L.P., and J.W. all testified at trial as to the sexual abuse they suffered at the hands of the defendant. Thus, we find no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER THREE
It was error to admit to the jury the statement made by K [K.A.] to an investigator for the District Attorney’s Office, two years post-indictment and in preparation for trial, under the guise of the “first report” exception to the bar against hearsay.
In this assignment the defendant argues that the trial judge erred by admitting into evidence the statement made by K.A. to James Thomas, an investigator for the District Attorney’s office, two years post-indictment and in preparation for trial, under the guise of the first-report exception to the bar against hearsay.
|1sThe State responds that the statement K.A. made to Thomas on February 20, 2010 was the first report of additional rapes and, therefore, those statements were not hearsay but were admissible as statements of initial complaint of sexually assaultive behavior. Alternatively, the State responds that any error would be harmless given that Thomas’ testimony was merely cumulative of K.A.’s previous testimony.
On March 8, 2010, the State filed a notice of intent to introduce statements of initial complaint of sexually assaultive behavior, pursuant to La. C.E. art. 801(D)(1)(d).[7] In that notice, the State said that K.A. made an initial complaint of sexually assaultive behavior to James Thomas, an employee of the District Attorney’s Office, on February 24, 2010. The State noted that K.A. initially said that the defendant raped him one time, - but that K.A. had recently disclosed to Thomas that the defendant raped him between six and ten times, and that the rapes occurred when he was between the ages of five and eleven. The State argued that the statement was not hearsay and was admissible under La. C.E. art. 801(D)(1)(d).
At trial, K.A. testified that he initially told his mother that the defendant raped him one time, but that at a later time, he told someone that the defendant actually raped him “a number of times.” K.A. further testified that he was seven to eleven years old when the incidents occurred, and that they occurred in their residences on Holmes Boulevard and on Helen Street.
Thomas later testified that he assisted an attorney in interviewing K.A. Thomas explained that K.A. initially disclosed to them that he had been abused by the defendant. They asked K.A. during their second meeting if he had anything to add, and K.A. responded that the defendant had raped him on at least five 11fioccasions or more when he was between the ages of six and ten. Thomas later testified that K.A. told him the incidents occurred when he was between the ages of five and eleven.
La. C.E. art. 801(D) provides in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
*626 [[Image here]]
(d) Consistent with the declarant’s testimony and is one of initial complaint of sexually assaultive behavior.
Comment (e) to Article 801(D)(1) provides in pertinent part:
(e) The approach taken under Part (d) of subparagraph (D)(1) minimizes confrontation problems. It is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision. Subsequent complaints or reports about the same crime would not be admissible under it. [Citations omitted; emphasis added].
Here, K.A. first reported to his mother that the defendant had raped him one time. However, at a later date, K.A. first reported other rapes to James Thomas. The complaint or report to Thomas was not about the same crime. Therefore, we find that K.A.’s statement to Thomas was one of initial complaint of sexually assaul-tive behavior for those other rapes. In addition, the account of the incident given by Thomas corresponded with K.A.’s own testimony and K.A. was subject to cross-examination. Therefore, we find that James Thomas’ testimony about the sexual abuse constitutes admissible non-hearsay under La. C.E. art. 801 D(l)(d). |178ee State v. Burks, 04-1435, p. 12 (La.App. 5 Cir. 5/31/05), 905 So.2d 394, 402, writ denied, 05-1696 (La.2/3/06), 922 So.2d 1176.[8]
Nevertheless, even if the trial judge erroneously admitted Thomas’ testimony, any error was harmless since that testimony was cumulative or corroborative of other evidence, i.e., K.A.’s testimony. State v. Hester, 99-426, p. 17 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 107, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342. Hence, there is no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER FOUR
It was error to prohibit the defense from cross examining J2 [J.A.] regarding other complaints that she had made of alleged sexually assaultive behavior. The trial court’s prohibition in this regard unconstitutionally restricted appellant’s ability to confront his accuser.
The defendant argues that the trial judge erred by prohibiting him from cross-examining J.A. regarding complaints of sexual abuse she made against adults other than him.
The State responds that the trial judge did not err in this manner, noting that the defendant was prohibited by La. C.E. art. 412 from questioning J.A. regarding her past sexual behavior.
The State filed a motion in limine on April 19, 2010, moving that the defendant be prohibited from introducing evidence of prior sexual conduct of any victim, pursuant to La. C.E. art. 412. During the trial on June 3, 2010, the State filed another motion in limine under La. C.E. art. 412, moving that the defendant be prohibited from introducing evidence of prior sexual assaults with respect to victim J.A.
| mAt the hearing on the motion on June 3, 2010, the prosecutor informed the trial judge that one night prior, J.A. made an *627 allegation of sexual abuse against her mother’s new husband, but the prosecutor argued that that evidence was inadmissible under La. C.E. art. 412, the “Rape Shield Statute.” After a lengthy hearing, the trial judge granted the motion in limine, thereby prohibiting the defense from questioning J.A. regarding her new allegations. Defense counsel noted an objection.[9]
La. C.E. art. 412, which provides the law pertaining to the admissibility of evidence of the victim’s past sexual behavior in sexual assault cases, is set forth in pertinent part as follows:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaul-tive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim’s past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; ... or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaul-tive behavior.
[[Image here]]
F. Past sexual behavior defined. For purposes of this Article, the term “past sexual behavior” means sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged. [Emphasis in original.]
In State v. Zeringue, 03-697, pp. 13-14 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, 195-196, writ denied, 03-3523 (La.4/23/04), 870 So.2d 298, this Court hndiscussed the law regarding an accused’s right to be confronted with the witnesses against him and his right to present a defense relative to La. C.E. art. 412:
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.
An accused also has a constitutional right to present a defense. As a general rule, a party may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. La. C.E. art. 607(C). The right of an accused sex offender to present a defense is, however, balanced against the victim’s interests under La. C.E. art. 412, which is meant to protect the victim of sexual assault from having her sexual history made public. The rape shield law is precisely drawn to exclude evidence of the alleged victim’s sexual history with persons other than the defendant. Sub-part B(l) of the article does make an *628 exception for “[e]vidence of past sexual behavior -with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury....” [Citations omitted.]
When a defendant attempts to use evidence of a victim’s false allegations of improper sexual behavior to impeach the victim’s credibility, the rape shield statute does not apply. State v. Smith, 98-2045, p. 5 (La.9/8/99), 743 So.2d 199, 203. The relevant inquiry in such cases is whether reasonable jurors could find, based on the evidence presented by the defendant, that the victim had made prior false accusations. Id. A trial judge’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308.
| anIn the instant case, we find that the defendant was prohibited from questioning the victim, J.A., regarding her allegations of sexual abuse against individuals other than the defendant because La. C.E. art. 412 prohibits evidence of the victim’s past sexual behavior. Further, none of the exceptions to Article 412 apply. Evidence of past sexual behavior with persons other than the defendant was not admissible, because there was no issue as to whether the defendant was the source of semen or injury. Finally, there was no evidence that the victim had made prior false allegations of improper sexual behavior against anyone. In fact, the defense conceded that there was no evidence that the new claim was false.[10]
The defendant asserts that he sought to prove for impeachment purposes that the victim had made false allegations regarding sexual activity. He contends that because he was seeking to cross-examine J.A. about her past allegations of sexual abuse, he was not attempting to introduce evidence of her past sexual behavior. He further contends that the issue was one of credibility and, therefore, La. C.E. art. 412 was inapplicable.
The defendant cites no law in support of this contention, and we find none involving this specific issue. Nevertheless, the only manner in which the defendant could have questioned J.A. about her past allegation of sexual abuse was to question her about the sexual act that formed the basis for the sexual abuse, which is prohibited by La. C.E. art. 412. Further, this Court has found that the rape shield law is intended to forbid evidence showing that the victim voluntarily or involuntarily engaged in sexual activities with a person or persons other than the defendant. State v. Hotoph, 99-243, p. 15 (La.App. 5 Cir. 11/10/99), 750 So^dJgjlOSG, 1046, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062; 00-150 (La.6/30/00), 765 So.2d 1066.
We find the trial judge did not err by granting the State’s motion in limine and prohibiting the defendant from questioning J.A. regarding her allegations of sexual abuse against individuals other than the defendant. There is no merit to this assignment.
ERROR PATENT DISCUSSION
We reviewed the record for patent errors, pursuant to La.C.Cr.P. art. 920, State *629 v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find one patent error that requires correction.
The record does not reflect that the defendant was notified of the sex offender registration requirements for his conviction of aggravated rape. La. R.S. 15:540, et seq. require registration of sex offenders, and La. R.S. 15:543(A) requires the trial judge to provide written notification of the registration requirement of La. R.S. 15:542 to the defendant. The trial court’s failure to provide this notification constitutes error patent. State v. Morgan, 06-529, p. 23 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 213. Therefore, we remand the matter and instruct the district court to notify the defendant of the sex offender registration requirements (and the child predator registration provisions) and to furnish the record with proof of such notice to the defendant. See State v. Nguyen, 11-229 (La.App. 5 Cir. 12/28/11), 88 So.3d 511, 523 [11]; State v. Williams, 09-48, pp. 18-19 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860.
[¡^DECREE
For the foregoing reasons, the conviction and sentence are affirmed. The matter is remanded and the district court is instructed to notify the defendant of the sex offender registration requirements and the child predator registration provisions, and to furnish the record with proof of such notice to the defendant.

AFFIRMED AND REMANDED WITH INSTRUCTIONS

WICKER, J., concurs and assigns reason.

. The death penalty provision of La. R.S. 14:42 was held unconstitutional in Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008).

. To protect the privacy of the victim, we use initials to identify the victim, the child witnesses, and the victim's family members, pursuant to La. R.S. 46:1844(W)(3). State v. Greene, 06-667, p. 3 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1229, writ denied, 07-0546 (La. 10/26/07), 966 So.2d 571.

. James Thomas testified K.A. told him that the defendant had raped him on at least five occasions or more, and that K.A. was between the ages of six and ten when those incidents occurred.

. Detective Horne testified she learned that this incident occurred between December of 2006 and December of 2007.

. This opinion has not been released for publication in the permanent law reports; until released it is subject to revision or withdrawal.

. Some of the testimony specified in appellant’s brief is by Deputy Donald Cannatella and some is by Detective Kay Horne. Appellant’s brief, however, misattributes Horne’s statements to Cannatella. In discussing the testimony, we have attributed each of the statements to the witness who made them.

. On April 15, 2010, the State filed four notices entitled, "Notice of Intent to Introduce Statements of Initial Complaint of Sexually Assaultive Behavior Pursuant to Louisiana Code of Evidence Article 801(D)(1)(d)” with respect to victims, L.P., J.A., J.W., and K.A., which the defendant states are not the subject of this assignment.

. In Burks, this Court found that testimony about the sexual abuse by Raine Celestine, the first person to whom the victim reported it, was admissible non-hearsay under La. C.E. art. 801(D)(1)(d). We noted that the victim first reported the sexual abuse to Celestine, the account of the incident given by Celestine corresponded with the victim’s own testimony, and the victim was subject to cross-examination.

. The defense moved for a stay of trial to allow investigation of the new allegations by J.A., but the trial judge denied the motion. The defendant filed a writ application with this Court challenging the trial judge's ruling.
This Court denied the writ, finding that on the presentation made there was no error in the trial court’s ruling. State v. Hernandez, 10-K-462 (La.App. 5 Cir. 6/3/10) (unpublished writ disposition).

. The defendant did not file a motion to offer evidence of the victim’s past sexual behavior, as required by La. C.E. art. 412 C(l), presumably because the new sexual abuse allegations surfaced during trial. See State v. Hotoph, 99-243, p. 17 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1047, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-150 (La.6/30/00), 765 So.2d 1066, in which this Court found that, because the defendant failed to make the proper motion under Article 412, he waived the right to introduce any evidence of the victim’s past sexual history.

. This opinion has not been released for publication in the permanent law reports. Until released, it is subject to revision or withdrawal.