NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-223

STATE OF LOUISIANA

VERSUS

G.D.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07K5035D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

AFFIRMED.

Amy, J., concurs in the result.

Earl B. Taylor
27th JDC District Attorney
P. O. Drawer 1968
Opelousas, LA 70571
(337) 948-0551
COUNSEL FOR APPELLEE:
    State of Louisiana

**Alisa Ardoin Gothreaux**
**Asst. District Atty. 27th JDC**
**P. O. Drawer 1968**
**Opelousas, LA 70571-1968**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Roy J. Richard, Jr.**
**Attorney At Law**
**812 Johnston Street**
**Lafayette, LA 70501**
**(337) 351-7726**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **G. D.**

**SAUNDERS, Judge.**

Defendant, G.D.[1], was indicted for eighteen sexual offenses against seven juveniles in November 2007. On June 27, 2008, a hearing was held and the charges were severed into different docket numbers for each victim. On November 12, 2008, a new indictment under docket number 07-5035 for two counts of aggravated incest, violations of La.R.S. 14:78.1, and one count of aggravated rape, a violation of La.R.S. 14:42, upon the juvenile M.D. was issued.

A jury trial commenced on August 31, 2011, and on September 2, 2011, Defendant was found guilty as charged. Defendant was sentenced on September 15, 2011, to ten years at hard labor on each count of aggravated incest and life imprisonment on the conviction for aggravated rape, without the benefit of parole, probation, or suspension of sentence, plus five thousand dollar fines on the two aggravated incest convictions. All the sentences were ordered to be served consecutively.

Defendant has perfected a timely appeal, asserting four assignments of error. For the following reasons, we affirm the convictions for two counts of aggravated incest and one count of aggravated rape.

**FACTS:**

M.D. was Defendant's granddaughter. Starting when she was about four or five years old, Defendant had oral sexual contact with the girl. He involved other grandchildren in sexual activity with her. When M.D. was twelve years old, Defendant had sexual intercourse with her.

**ERRORS PATENT:**

---

[1]This court uses the initials of a defendant in cases within the purview of La.R.S. 46:1844(W) when there is a familial relationship between the defendant and the victim(s).

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In this assignment of error, Defendant raises the issue of the constitutionality of La.Code Evid. art. 412.2, evidence of similar crimes, wrongs, or acts in sex offense cases. Article 412.2(A) provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

He argues that the trial court erred when it made a pretrial determination that the testimony of four of the other victims would be admitted at trial. A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Cosey*, 97-2020 (La. 11/28/00), 779 So.2d 675, *cert. denied,* 533 U.S. 907, 121 S.Ct. 2252 (2001).

He argues that their trial testimony was substantially more prejudicial than probative, thus rendering the trial fundamentally unfair because he was forced to testify to refute their accusations, which "placed him in the precarious position of defending himself on five (5) separate cases that had already been severed in the interest of justice."

On June 4, 2009, Defendant filed "Defendant's Memorandum Citing *State v. Kennedy* as Prohibiting the State from Introducing Evidence of Other Crimes, Acts or Wrongs to Show Lustful Disposition in Prosecution of General Intent Crime." On June 8, 2009, he filed a "Supplemental and Amending Motion to Declare

Louisiana Code of Evidence Article 412.2 Unconstitutional." On January 5, 2010, Defendant filed a "Motion in Limine to Exclude the Use of Other Crime Evidence Against the Defendant Based on the Fact that Said Other Crime Evidence Consists of 'Charged Conduct' of Alleged Crimes in Separate and Distinct Docketed Cases Pending Before this Honorable Court." A hearing was held on January 22, 2010, following which the trial court denied the motions.

The trial court gave the following reasons for denying Defendant's motion to declare La.Code Evid. art. 412.2 unconstitutional:

> The defendant here says it's just not fair. It violates due process. It's vague. It violates equal protection. It violates the ex post facto rules. For the reasons of *State v. Willis*[, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006)] with Judge Thibodeaux, which was a quite [an] erudite opinion, I thought. As to ex post facto[,] I find that ex post facto is not violated, that the constitutionality of 412.2 is not affected based on an ex post facto [examination]. The equal protection argument and due process argument in *Willis*, I guess in--for the reasoning utilized by [*United States v.* Enjady, 134 F.3d 1427 (10th Cir.), *cert. denied*, 525 U.S. 887, 119 S.Ct. 202 (1998)], although I recognize the statutes are different, I don't find that due process is violated. I find that 412.2, as so astutely pointed out by Mrs. Gothreaux in the *ENJADY* decision they say "that the practice is ancient does not mean it's embodied in the constitution." So historically, we used what we used to call the *State vs. Prieur*, [ 277 So.2d 126 (La.1973)]which was then--the acronym utilized was K.I.S., knowledge, system and intent and embodied in the *Kennedy* decision, and that's been historically the case. [Louisiana Code of Evidence Article] 412.2 is of relatively recent vintage in the [S]tate of Louisiana. The recent vintage does not necessarily make it bad vintage. I find that the statute 412.2 is constitutional and so rule. With that--and for the reasons as espoused, I borrow, acknowledge and agree with the reasoning of *ENJADY* and the *Willis* decision in reaching my decision here on that portion.

Because the jurisprudence concerning the constitutionality of La.Code Evid. art. 412.2 is limited, we observe that Fed. R. Evid. 413 and 414, prior to amendment in 2011, were similar. As cited below, that federal jurisprudence has held on several occasions that those provisions were constitutional.

Louisiana Code of Evidence Article 412.2 is written as follows:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

Like La.Code Evid. art. 412.2, Fed.R. Evid. 413 addresses the admissibility

of other sex crimes in sex offense cases:

(a) In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In a case in which the Government intends to offer evidence under this rule, the attorney for the Government shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

(d) For purposes of this rule and Rule 415, "offense of sexual assault" means a crime under Federal law or the law of a State (as defined in section 513 of title 18, United States Code) that involved—

(1) any conduct proscribed by chapter 109A of title 18, United States Code;

(2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;

(3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;

(4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person; or

(5) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(4).

Further, Fed. R. Evid. 414, applies specifically to sex offenses involving children:

(a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In a case in which the Government intends to offer evidence under this rule, the attorney for the Government shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

(d) For purposes of this rule and Rule 415, "child" means a person below the age of fourteen, and "offense of child molestation" means a crime under Federal law or the law of a State (as defined in section 513 of title 18, United States Code) that involved—

(1) any conduct proscribed by chapter 109A of title 18, United States Code, that was committed in relation to a child;

(2) any conduct proscribed by chapter 110 of title 18, United States Code;

(3) contact between any part of the defendant's body or an object and the genitals or anus of a child;

(4) contact between the genitals or anus of the defendant and any part of the body of a child;

(5) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child; or

(6) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(5).

Thus, although the federal rules are more explicit, they are still similar to La.Code Evid. art. 412.2. The Ninth Circuit Court of Appeals has discussed whether Fed. R. Evid. 414, the federal rule specifically addressing sex offenses against children, undermined the constitutionally guaranteed presumption of innocence and determined that it did not:

> [It] does not create a presumption that a defendant is guilty because he has committed similar acts in the past; it merely allows the jury to consider prior similar acts along with all other relevant evidence. Moreover, although the inference that because a person has done something once, he might be more likely to have done it again has until recently been impermissible, it is certainly not irrational.

*United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001), *cert. denied*, 534 U.S. 1166, 122 S.Ct. 1181 (2002). Additional jurisprudence, discussed in further detail below, has held that, because the protections set forth Fed. R. Evid. 402 and 403 (the same protections set forth in La.Code Evid. arts. 402 and 403) apply to other sex crimes evidence, there is no infringement on defendants' constitutional presumption of innocence.

Examination of the federal jurisprudence reveals that federal courts have held that Fed. R. Evid. 413 and 414 do not violate the Due Process Clause as long as the evidence is relevant and the danger of unfair prejudice does not outweigh the probative value of the evidence. *See Enjady*, 134 F.3d 1427; *United States v. Mound*, 149 F.3d 799 (8th Cir. 1998), *cert. denied*, 525 U.S. 1089, 119 S.Ct. 842 (1999); *United States v. Castillo*, 140 F.3d 874 (10th Cir. 1998); and *LeMay*, 260 F.3d at 1018.

Thus, under the rationale set forth in examining the constitutionality of the similar federal statutes, La.Code Evid. art. 412.2 would be constitutional on its face. Additionally, application of La.Code Evid. art. 412.2 would not be

unconstitutional as long as the other sex crimes evidence were admitted in compliance with La.Code Evid. arts. 402 and 403.

At the hearing, the trial court held that, at trial, the other sex crimes witnesses would be required to be sworn and, in a sealed courtroom, inform the court what they, individually, intended to testify to prior to being allowed to testify at the trial so that the trial court could perform a La.Code Evid. art. 403 evaluation of the evidence. Further, as discussed more fully herein, the trial court subsequently conducted a hearing in order to determine whether the other sex crimes witnesses' evidence was relevant and whether the prejudicial nature of that evidence outweighed its probative value. Given our finding that Defendant's contention has no merit that Article 412.2 is unconstitutional, we will now address his claim that the trial court abused its discretion in permitting that evidence to be admitted.

> In the current brief, Defendant argues (emphasis in original):

> The [trial] court denied the defendant's motion as to the constitutionality of La. C.E. Art. 412.2 and took special note of the decision in the federal jurisprudence to include the [*United States v.*] *Enjady* [134 F.3d 1427 (10th Cir.), *cert. denied,* 525 U.S. 887, 119 S.Ct. 202 (1998)] opinion delivered by the United States Court of Appeals, Tenth Circuit, and the Louisiana Third Circuit Court of Appeals opinion delivered by Judge Thibodeaux. Further, the trial court stated that **"*I find it's constitutional and I'm going to allow the other crimes evidence in. At this point I don't know to what extent as yet because I've received no evidence on the amount, magnitude, number.*"** After considering the constitutionality of the statute and no evidence to apply the La. C.E. Art. 403 balancing test, how could that decision be made when it's required under La. C.E. Art. 412.2A? The [trial] Court returns to its considerations and takes into account the required balancing test and orders that a hearing be conducted, wherein the defendant would be allowed to cross examine each of them.

On July 30, 2010, a hearing was held wherein the State presented the four witnesses who would testify at trial to sexually assaultive behavior exhibited by Defendant towards them. The purpose of the hearing was to determine the

7

probative value of their testimony pursuant to La.Code Evid. art. 403, which provides in pertinent part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

At the hearing, the victim testified first. Then the four "other crime" witnesses testified—two were granddaughters, one a grandnephew, and a friend of one of the granddaughters. All the witnesses, except for one, testified the acts started when they were very young, between four and five and continued until they were twelve and thirteen years old. In the case of the friend, a single act took place when she was eleven. Following the witnesses' examination by the State and Defendant's rigorous cross-examination, the trial court concluded:

> What I have to decide today is the balancing test. I mean, once I make the finding, it's what I just did, and I look at balancing under 403 of our Code of Evidence which states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . " We'll come back to that because I think that's where this fulcrum rests. But unfair prejudice, confusion of the issues—I don't think it's going to confuse anything. Is it going to recognize his lustful disposition toward children? Absolutely. It doesn't confuse it; it might enhance it. That was the intent of 412.2, I thought. Propensity. Or misleading the jury. I don't think the jury is going to be misled at all. It may aid in credibility, but it's not going to mislead it. Or by considerations of undue delay or wasted time. If I wouldn't have taken the three breaks I took today, we could have done this in an hour and a half, two hours. There's no undue wasted time here. So the fulcrum rests upon the short version of 403 that we all use in the probative value outweighed by the prejudicial effect. The operative words to me are "substantially outweighed". The reasoning of <u>Enjady</u> is that it should be infrequently used to—the 403 balancing test should be infrequently used—let me get that language, exactly what I'm—that the probative value being outweighed by the risk of unfair prejudice should be used infrequently reflecting Congress's legislative judgment that the evidence should normally be admitted and the fact that I think 412.2 was created because the legislature believed it was necessary to lower the obstacles to admission of propensity evidence in a defined class of cases which was sexually assaultive behavior to children. I'm going to let it all in. I find all four of them—I don't find that they are substantially outweighed—the prejudicial effect is substantially outweighed by the probative value given the policy decisions I find were—or are available for the existence of the statute and its application.

In brief, Defendant argues that the four witnesses' testimonies at trial constituted over 75% of the State's case; therefore, he had no choice but to testify to refute the overwhelming "false accusations." He asserts that "[n]one of the alleged witnesses['] allegations corroborated the other, had physical evidence, nor any trustworthiness as to whether or not they even occurred." However, testimonies of granddaughter E.D. and grandnephew C.D. corroborated each other's testimony and the victim's testimony. They each testified that he would make them performed sex acts on each other or made them watch as they performed sex acts on him. The granddaughter whose friend was assaulted by Defendant verified the friend's testimony, describing the day in particular that the friend came to visit and left terribly upset. Except for the friend, the victim and the other two of the witnesses testified that Defendant's wife was somewhat aware of sexual activity between Defendant and the children. Further, the victim and one of the three witnesses testified the sexual activity essentially stopped after the grandmother died.

Defendant argues that the trial court failed to comply with the balancing test and considerations made when it severed the eighteen counts of sexual abuse into different docket number for each victim. He argues the purpose of the severance was to avoid undue prejudice and that the same determination should have applied to the witnesses the State desired to present at trial. Defendant, however, initially argued that the counts should be severed because of the sheer numerosity of the responsive verdicts.

The hearing to address Defendant's motion to sever was held on June 27, 2008. At the hearing, Defendant argued that to litigate all eighteen counts which involved seven victims would create hostility with a jury. Defendant also argued that with eighteen counts, seven victims, and three different offenses, charging the

9

jury would become "a train wreck." Defendant pointed out that "[t]here's ninety-eight responsive verdicts in here. You've got to—you've got to—with these eighteen counts and seven victims. And, you know, the law provides you 'shall' charge the jury as to each grade."

While the trial court agreed with Defendant that eighteen counts of sexual abuse involving seven victims could create a hostile environment with the jury, the trial court also noted:

> [I]f I can feel uneasy with the number and volume and nature, then I believe a jury would have an equal time doing so. I agree with Mr. Guilbeau [Defendant's attorney] that we've got ninety-eight responsive verdicts. I don't know that I'd have to read the same law ninety-eight times but even if I said, okay, I'm going to take indecent behavior [with] a juvenile and read that definition and then say it applies to seven different victims, eight different times, just those two numbers would be somewhat confusing to me.

We do agree with Defendant—one of the reasons the trial court severed the counts by victims was to avoid undue prejudice to Defendant. However, in the current case, there was only one victim and two offenses. Thus, the trial court's test of whether seven victims, eighteen counts, and ninety-eight responsive verdicts would be prejudicial to Defendant's case was not the same analysis it used to determine whether the probative value of other crimes evidence outweighed the prejudicial effect in the current trial.

Furthermore, Defendant complains that the witnesses' testimonies were most of the State's case. We find that the need for lengthy testimonies regarding the facts of the witnesses' allegations were necessary because the State had to prove that the defendant committed the other offenses. *See State v. Hernandez*, 11-712 (La.App. 5 Cir. 4/10/12), 93 So.3d 615, wherein the victim was five or six years old when he was raped. The state introduced evidence of the sexual abuse of two young neighborhood girls and a seven-year-old step-granddaughter. *Id.* The fifth

circuit found the evidence was relevant to show the defendant's lustful disposition for very young children and that the probative value of the other crimes evidence was not substantially outweighed by unfair prejudice, confusion, undue delay, or waste of time. *Id.* The fifth circuit noted that "[w]ith respect to the volume of other crimes evidence, because the State contended the defendant committed three other crimes, there was necessarily more testimony regarding the other crimes evidence than the crime for which the defendant was standing trial." *Id.* at 622. *See also State v. Harris,* 11-253 (La.App. 5 Cir. 12/28/11), 83 So.3d 269, *writ denied*, 12-401 (La. 8/22/12), __ So.3d __ wherein the defendant complained that he was prejudiced by the admission of testimony of a prior aggravated rape offense. The fifth circuit held "[t]here also is no showing that the jury was misled or confused by the volume and presentation of the other sexual crime evidence." *Id.* at 281.

We find it clear that the probative value of the four witnesses' testimonies outweighed the danger of unfair prejudice to Defendant and, therefore, Defendant has failed to show that the trial court abused its discretion when it granted the State's motion to introduce other crimes evidence in the form of testimony of the four of Defendant's victims. This assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER 2:**

Defendant argues he was denied due process when the trial court restricted his questioning of the State's witness, Nicolette Joseph, a forensic interviewer who worked for the children's advocacy center, Hearts of Hope. Ms. Joseph interviewed victims of sexual abuse. Ms. Joseph testified she was contacted in September 2007 and asked to conduct an interview of M.D. The interview was video-recorded, and the recording was shown to the jury. At the time, Defendant stipulated to the authenticity of the recording but objected to the contents.

11

Following the publication of the recording to the jury, defense counsel asked Ms. Joseph "with regard to showing of the things that [M.D.] talked about, with regards to the incident where she said that Mr. [M.D.] asked her if he could give her an orgasm, that took place in Mr. [G.D.]'s home according to [M.D.]? Is that correct?" Here, the State objected because the video was the best evidence and defense counsel was asking the witness to comment on the video. The objection was overruled. Defense counsel then continued to question the witness in the same vein, repeatedly asking her if the victim had said Defendant wanted to give her an orgasm in his house. The trial court stopped the questions and took counsel into chambers.

> THE COURT: Okay. After listening carefully to the flow of the questions, I'm inclined to apologize to Mrs. Gothreaux. [prosecutor] You're asking her, her recollection of what they just heard on the tape and we're not doing that. If you want to make your arguments, you do it at the end of the trial. That's it.

> MR. GOODE: [defense counsel] Thank you, your Honor.

> MR. GUILBEAU: [defense counsel] So we're denied cross examination of this witness because you want us to do that in argument at the end of the trial and not during cross examination. Is that it?

> THE COURT: Mr. Guilbeau, let me explain to you what it is.

> MR. GUILBEAU: Alright, please do.

> THE COURT: When you ask a question, I'm going to listen to the validity of it.

> MR. GUILBEAU: Yes, sir.

> THE COURT: What Mr. Goode is asking, after they have just heard a forty-five minute tape, is to give us her recollection of what was said on that tape. So if you think I'm denying you—no, no, if you think I'm denying you cross examination of that level of question, I guarantee you I am. Now you can take that.

Defense counsel proceeded to ask Ms. Joseph several questions regarding her interview methods and then concluded the examination. In brief, Defendant

12

argues that he was attempting to establish a foundation for a proper cross-examination. He asserts that he had issues with "the interpretation of the verbiage" that was heard on the recording.

Following the jury viewing the video, the witness had stated that after forty-five minutes of talking with the victim, the interview was concluded because "they had enough information." Defendant contends:

> Upon returning to the Court, defense counsel was left without an ability to even the playing field as to the state's questioning and Ms. Joseph's testimony that "they had enough information", which is clearly an interpretation on [sic] what was said and the value she placed on said statements. It was impossible for defense counsel Goode[] to ask her about what point of the interview was critical, what were her individualized recollections, and what led her to say the, "they" had "enough information." Said ruling by the trial court in chamber[s] [stifled] the defendant's right to a full and extensive cross-examination of the actual interviewer, who was the professional taking such damning statements.

As noted by the State, a defendant has the right to present a defense; however, the right to present a defense does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value it is outweighed by other legitimate concerns. *State v. Ramirez*, 09-350 (La.App. 5 Cir. 12/29/09), 30 So.3d 833. We find that the information Defendant contends he was attempting to seek was not relevant to the case. The witness was just the interviewer and had no role in the decision to prosecute Defendant. She was simply there to lay the foundation for the presentation of the video-recorded interview for the jury. Thus, we find that there is no merit to this assignment.

**ASSIGNMENT OF ERROR NUMBERS 3 AND 4:**

Defendant argues that he suffered a violation of due process when the trial court did not include a specific date in its jury instruction regarding count III, the aggravated rape offense. We do not agree.

Pursuant to the indictment, the act of aggravated rape, count III, was committed on December 31, 2001. This offense was based on the victim's testimony that her grandfather penetrated her vaginally on that date. Count I, aggravated incest, was alleged to have been committed January 1, 1997, through December 31, 1998. This offense was based on the victim's testimony that she was often forced to perform oral sex on her grandfather. The second aggravated incest offense, count II, was alleged to have occurred on or about April 22, 2007. This offense was based on Defendant's attempt to solicit sex for money from his granddaughter.

Prior to the trial court instructing the jury, Defendant argued that the date December 31, 2001, should be added to the definition of what constituted aggravated rape in the instructions. Defendant argued that in December 31, 2001, the aggravated rape statute included oral sex as a component of rape but the statute did not include oral sex as a component before August 15, 2001.

In brief, Defendant argues that "[t]he trial Court erred in not specifically including special instruction as to the law on [a]ggravated rape prior to the date of August 15, 2001, leading to unclear instructions as to the elements of each offense." When the trial court read the instructions to the jury, which included the definition of the offenses, the court did not include the date of the alleged offense of aggravated rape.

Apparently, Defendant's concern was that the jury would become confused and find him guilty of aggravated rape for the one offense charged as aggravated incest which involved oral sexual activity. However, the jury returned the verdict, as follows:

> Aggravated rape: We, the Jury, find the defendant guilty of aggravated rape as charged. . . . Count I, on or about January 1, 1997 through December 31, 1998, aggravated incest: We, the Jury find the

defendant guilty of aggravated incest on or about January 1, 1997 through December 31, 1998. . . . Count II, on or about April 22, 2007, aggravated incest: We, the Jury, find the defendant guilty of aggravated incest on or about April 22, 2007 as charged. . . .

Therefore, the jury correctly determined which offenses went with which set of facts. As noted by the State, the date of the offense in the case of aggravated rape was not an element of the crime in this case. *State v. Glover*, 304 So.2d 348 (La.1974). Even if it was an error that the trial court did not include the date of the offense, the error was certainly harmless in this case. These two assignments of error are without merit.

## DECREE:

Defendant's convictions for one count of aggravated rape and two counts of aggravated incest are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules–Courts of Appeal, Rule 2–16.3.