MARC E. JOHNSON, Judge.
| ¡¿Defendant, Calvin J. Bryant, appeals his conviction for forcible rape. For the following reasons, we affirm his conviction.
Defendant was charged in a bill of information on February 15, 2011 with forcible rape in violation of La. R.S. 14:42.1. He pled not guilty and proceeded to trial on November 14, 2011. After a three-day trial, a unanimous 12-person jury found *1193 defendant guilty as charged. Thereafter, the trial court sentenced defendant to 20 years at hard labor with the first two years to be served without the benefit of parole, probation or suspension of sentence.
The State subsequently filed a multiple offender bill of information alleging defendant to be a fourth felony offender based on three predicate convictions: possession with intent to distribute marijuana, carnal knowledge of a juvenile, and aggravated battery. Defendant denied the allegations and a multiple offender hearing was held. At the conclusion of the hearing, the trial court found defendant | sto be a “triple lifer.”[1] Accordingly, it vacated defendant’s original 20-year sentence and imposed an enhanced sentence of life imprisonment without benefit of parole, probation or suspension of sentence pursuant to La. R.S. 15:529.1.

FACTS

At approximately 6:45 a.m. on November 1, 2010, the victim, M.P.,[2] called 911 from an apartment on Tallowtree Lane in Harvey and reported that she had just been raped. Jefferson Parish Sheriff Deputy Jeffrey Reynolds responded to the dispatched call within minutes. He knocked on the door of the apartment and heard footsteps inside. A male yelled, “who is it,” and Deputy Reynolds responded, “the police.” After approximately one minute, defendant opened the door. From the door, Deputy Reynolds saw a tearful, white female standing at the top of the stairwell looking very scared. Deputy Reynolds handcuffed defendant and took him to the police car. He described defendant’s demeanor as nonchalant.
Deputy Serbrina Howard also responded to the call. By the time she arrived, defendant had already been removed from the apartment. Deputy Howard went inside and spoke to the victim, who was emotionally distraught. M.P. told Deputy Howard that she came home from work to find defendant, her live-in boyfriend, not at home. When he came home later, the two argued. After they argued, M.P. tried to go to sleep, but defendant tried to cuddle with her. M.P. refused his advances at which time defendant forced her legs open and repeatedly penetrated Rher vagina with his penis. He then made her shower. Thereafter, in the bedroom, a struggle en *1194 sued. Defendant placed M.P. in a choke-hold and she briefly lost consciousness. When she regained consciousness, defendant was applying lotion to her rectal area. He then anally penetrated M.P. According to Deputy Howard, M.P. was asked to recount the incident several times on several occasions and there were no inconsistencies in any of her accounts.
Both defendant and the victim were photographed at the scene. Defendant had no visible injuries other than an old healing scratch to his neck, which defendant testified was caused by M.P. several days earlier. On the other hand, M.P. had bruises and scratches to her back, shoulder and neck area.
Another officer, Sergeant Pamela Labo-rie, took M.P. to Lakeside Hospital for a rape examination. Sgt. Laborie testified that M.P. recounted the incident during the ride to the hospital. According to Sgt. Laborie, M.P. told her that defendant arrived home late and the two argued. M.P. went to bed at which time defendant tried to cuddle with her. She refused his advances and he became forceful. Defendant tore M.P.’s panties off, forced her legs open and vaginally penetrated her. M.P. told Sgt. Laborie that defendant threatened to knock her unconscious. After defendant ejaculated, he forced M.P. to shower and clean her vaginal area with soap. He then took her back to bed and tried to vaginally penetrate her again. M.P. fought defendant by scratching and biting him, but defendant put M.P. in a chokehold and she lost consciousness. When she regained consciousness, M.P. found herself face down in the mattress with defendant applying lotion to her anal area. Defendant then anally penetrated M.P.
Once at the hospital, Dr. Eduardo Herrera performed a rape examination. He testified that M.P. was quiet and tearful during the exam. She complained of abdominal, back, neck and anal pain. He stated M.P.’s examination was normal, |fibut explained the majority of rape victims have normal findings during a rape exam. Dr. Herrera noted that M.P. had several scratches and bruises, which were only several hours old. He further noted she had a thick, creamy discharge at her anal opening. Dr. Herrera concluded M.P.’s exam and demeanor was consistent with the history of sexual assault that M.P. provided.
Meanwhile, defendant was transported to the detective bureau where Detective Solomon Burke interviewed him after advising defendant of his rights. During the interview, defendant was relaxed and cooperative. Detective Burke testified that defendant stated he came home late and M.P. was angry. She accused him of cheating on her, which he denied. According to defendant, he and M.P. had a contentious relationship. After the argument died down, the two went upstairs and showered. He explained the two usually had sex after arguing. Defendant stated that after the shower, he initiated anal sex, which he claimed they did all the time. According to Detective Burke, when he told defendant a physical exam would be able to tell if M.P. engaged in anal sex on a regular basis, defendant changed hi's claim of anal sex from “all the time” to “once in a while.” Defendant subsequently gave a taped statement, which was played for the jury. In it, defendant claimed the sex was consensual.
At trial, M.P. testified that she and defendant had been in a romantic relationship for approximately four months and were living together at the time of the incident. She had recently learned she *1195 was pregnant with defendant’s child, and both she and defendant were excited.
M.P. stated that on the evening of October 31, 2010, she returned home from work expecting defendant to be there, but he was not. When he came home a little later, M.P. went upstairs to go to sleep. Defendant followed her into bed and tried to cuddle, but M.P. pushed him away and told him to leave her alone. M.P. stated | fithat defendant then jumped on top of her, ripped off her underwear, pried open her legs and put his penis in her vagina. M.P. testified that she tried to kick defendant off, but she could not. She stated that she was crying and screaming for defendant to leave her alone.
Defendant next brought MiP. into the shower and washed her body. When they finished the shower, defendant made M.P. lie next to him and tried to make her rub lotion on his chest. When M.P. refused, defendant became aggravated and the two started fighting. She stated she tried to hit him and poke him in the eyes but she could not get defendant off of her. She finally head-butted defendant at which time he put her in a headlock causing her to lose consciousness. M.P. woke up with her face in a pillow and discovered defendant was rubbing lotion on her butt. M.P. testified that defendant then put his penis in her anus. She told him she did not want to do that, but he threatened to knock her out again. M.P. explained that she was anally raped at the age of 12, so she did not participate in anal sex. When defendant finished, M.P. went to the bathroom, grabbed defendant’s phone out of his pants pocket, and called 911. She did not tell defendant she called the police because she was scared he was going to kill her.
Defendant also testified at trial. He stated that on the evening of October 31, 2010, he had gone to a strip club on Bourbon St. and lost track of time. When he came home, M.P. was angry and accused him of cheating. He testified M.P. followed him around hitting him. He explained he and M.P. had a physically and verbally abusive relationship, with M.P. taking out her anger by hitting him; however, he claimed he never hit M.P. Defendant stated that after the argument calmed down, the two had sex like they always did after an argument. He denied raping M.P. and testified the sex that night was consensual. He explained that he |7and M.P. often engage in rough sex and that he has never made M.P. do anything she did not want to do.

DISCUSSION

Defendant raises two assignments of error on appeal. He first asserts the evidence is insufficient to support his conviction for forcible rape because there was no evidence of force. He contends the evidence shows nothing more than mere horseplay and consensual “rough sex.”
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
Defendant was convicted of forcible rape in violation of La. R.S. 14:42.1. Rape is defined as “the act of anal ... or vaginal sexual intercourse ... without the person’s lawful consent.” La. R.S. 14:41(A). Emission is not necessary and any sexual penetration, however slight, is sufficient to complete the crime of rape. La. R.S. *1196 14:41(B). The crime of forcible rape occurs when the sexual intercourse is deemed to be without the victim’s lawful consent because it is committed “[w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.” La. R.S. 14:42.1(A)(1). Thus, the elements of forcible rape are: (1) anal or vaginal sexual intercourse regardless of degree of penetration; (2) lack of consent of the victim; (3) a victim who was prevented from resisting by force or threat of physical violence; and (4) a victim who reasonably believed that resistance would not prevent the rape. State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297.
After a thorough review of the record, we are convinced that any rational trier of fact viewing the evidence presented in this case in the light most favorable to the State could find that the evidence proved, beyond a reasonable doubt, all of the elements of forcible rape. In this case, the jury was confronted with conflicting testimony offered by defendant and various witnesses for the State. Defendant testified he and M.P. engaged in consensual “rough” sex. He claimed M.P. called the police because she was mad at him for cheating on her, which he maintained he did not do.
Conversely, M.P. testified she refused defendant’s advances, at which time he ripped off her panties, forced open her legs and inserted his penis into her vagina. She stated she was crying and screaming for defendant to leave her alone and even tried to unsuccessfully kick him off of her. She further stated she later tried to hit him and poke him in the eyes, but still could not get defendant off of her. M.P. explained that when she finally head-butted defendant, he put her in a headlock, which caused her to lose consciousness. When she regained consciousness and found defendant rubbing lotion on her rectal area, M.P. told defendant she did not want to do “that.” According to M.P., defendant then threatened to knock her out again.
In addition to M.P.’s testimony, the jury heard testimony from two different police officers, both who testified that M.P.’s repeated accounts of the incident were consistent. The jury saw photographs of M.P. taken at the scene that showed numerous bruises and scratches on her neck, shoulder and back, which Dr. Herrera testified were only hours old. Additionally, Dr. Herrera testified that M.P. |9complained of abdominal, neck, back and anal pain, which was consistent with the history she gave regarding the events of that morning.
Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gordon, 11-373 (La.App. 5 Cir. 4/24/12), 94 So.3d 29, 34, writ denied, 12-1189 (La.10/8/12), 98 So.3d 851. Accordingly, the reviewing court’s role is not to assess credibility or reweigh evidence. Id.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact is sufficient support for a requisite factual finding. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. *1197 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Tapps, 02-547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789.
The jury heard all of the evidence and found the victim to be a credible witness. A review of the record as a whole shows the jury’s determination was reasonable and that a rational trier of fact could have found the evidence sufficient to prove the elements of forcible rape beyond a reasonable doubt. Accordingly, we find no merit to defendant’s argument.
Defendant next argues that the trial court erred in granting the State’s motion in limine, which prevented him from asking M.P. about her claims of two past sexual assaults. He asserts her claims of past sexual abuse were fraudulent and, therefore, were important for impeachment purposes and were not prohibited by | inLa. C.E. art. 412. Defendant claims the trial court’s prohibition violated his constitutional right to confront his accuser.
On the morning of trial, the State filed a motion in limine under La. C.E. art. 412 seeking to prohibit defendant from introducing evidence of M.P.’s past sexual history, including any past allegations of sexual abuse by a person other than defendant. Specifically, the State sought to prohibit defendant from questioning M.P. about two instances: (1) M.P.’s report of sexual abuse to the Jefferson Parish’s Sheriff’s Office in 2003; and (2) M.P.’s disclosure to the State that she believed she was the victim of sexual abuse at a garage party when she was 13 years old. The State argued these incidents were not admissible as exceptions to Article 412, were not admissible as prior false accusations because they were not false, and the incidents were irrelevant. The trial court agreed and granted the motion in limine.
Louisiana Code of Evidence Article 412 prohibits evidence regarding the past sexual behavior of the victim in sexual assault cases, except (1) when there is an issue of whether the accused was the source of semen or injury, and (2) when the past sexual behavior is with the accused and there is an issue of whether the victim consented to the charged sexually assaul-tive behavior. Article 412 does not apply when a defendant attempts to use evidence of a victim’s false allegations of improper sexual behavior to impeach the victim’s credibility. State v. Smith, 98-2045 (La.9/8/99), 743 So.2d 199, 202-03. However, the admissibility of such evidence is still subject to all other standards for admissibility under La. C.E. arts. 403, 404, 607, 608 and 613. Id., at 203.
When a defendant attempts to use evidence of a victim’s false allegations of sexual assault to impeach the victim’s credibility, the question of admissibility is whether reasonable jurors could find, based on the evidence presented by _Jjj defendant, that the victim had made pri- or false accusations, and whether all other requirements of the Code of Evidence have been satisfied. Smith, 743 So.2d at 203. The trial court’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Hernandez, 11-712 (La.App. 5 Cir. 4/10/12), 93 So.3d 615, 628, writ denied, 12-1142 (La.9/28/12), 98 So.3d 834.
*1198 We find that the trial court properly-granted the State’s motion in limine and prohibited defendant from questioning the victim about her allegations of sexual abuse against individuals other than defendant. First, La. C.E. art. 412 prohibits evidence of the victim’s past sexual behavior. Second, none of the exceptions to Article 412 apply: specifically, there was no issue as to whether defendant was the source of semen or injury and the evidence of past sexual behavior was with persons other than defendant. Finally, there was no evidence the victim’s prior allegations of improper sexual behavior were false.
At the hearing on the motion in limine, the State introduced the transcribed statements of M.P. and the suspect relating to the 2003 incident into evidence. Based on M.P.’s allegations, the defendant in that incident was arrested for carnal knowledge of a juvenile. In his statement, the defendant, who was 19 years old, admitted to having sex with M.P., who was 14 years old. Defendant offered no evidence to show that any of M.P.’s statements regarding the incident were false.
Defendant also failed to offer any evidence that M.P.’s belief that she may have been sexually abused during the garage party when she was 13 was false. According to the State, M.P. disclosed the garage party incident at some point prior to trial. M.P. indicated that she had been drinking during the party, blacked out, and woke up with hickies and bruises. She did not remember what happened and could not say anything of a sexual nature occurred. The State noted that M.P. did h ¡¡not report the incident, no allegations were made against anyone, and no one was ever charged. The State explained that it nonetheless disclosed the information to defense counsel because it felt it had a duty to do so. Although defendant argued the incident impacted M.P.’s credibility, he never showed, or even attempted to show, her allegations were false. Defendant’s mere assertion that the M.P.’s allegations were false, does not meet the Smith test for admissibility. See State v. Wallace, 788 So.2d at 587-88.
Accordingly, we find no error in the trial court’s granting of the State’s motion in limine to preclude mention of these two prior incidents involving M.P.

ERROR PATENT

In accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), we have reviewed the record for errors patent. Upon review, we find that the trial court failed to advise defendant of the two-year prescriptive period for filing an application for post-conviction relief at either the conclusion of his original sentencing or multiple offender sentencing. Although the multiple offender commitment reflects the advi-sal was given, the transcript, which prevails, is silent. See State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, by way of this opinion, we advise defendant that no application for post-conviction relief, including applications seeking an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. art. 914 or 922. See State v. Keller, 09-403 (La.App. 5 Cir. 12/29/09), 30 So.3d 919, 932, writ denied, 10-267 (La.9/17/10), 45 So.3d 1041.
Additionally, we find the trial court failed to inform defendant of the sex offender registration requirements in ac *1199 cordance with La. R.S. 15:540, et seq. | ^Defendant’s forcible rape conviction is defined as a sex offense by La. R.S. 15:541(24)(a). La. R.S. 15:542 outlines the mandatory registration requirements for sex offenders. La. R.S. 15:543(A) requires the trial court to notify a defendant charged with a sex offense in writing of the registration requirements of La. R.S. 15:542. The trial court’s failure to provide this notice is an error patent that requires remand.[3] Therefore, we remand this case to the trial court with instructions to the trial judge to inform defendant of the registration requirements for sex offenders by sending appropriate written notice to defendant, within ten days of this Court’s opinion, and to file written proof in the record that defendant received such notice. See State v. Starr, 08-341 (La.App. 5 Cir. 11/25/08), 2 So.3d 451, 460-61, writ denied, 08-2991 (La.9/18/09), 17 So.3d 384.
We further note the record does not reflect that defendant was advised of his rights prior to the multiple bill hearing as required by La. R.S. 15:529.1(D), which requires the trial court to advise a defendant of the allegations contained in the information, his right to a hearing, and his right to remain silent. State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 582. However, the failure of the trial court to advise a defendant of these rights is harmless when the defendant’s multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant. Id. at 583. Here, defendant denied the allegations of the multiple bill, and the State presented competent evidence at the hearing to establish his multiple offender status. Thus, we find the trial court’s failure to advise defendant of the specific allegations against him and of his right to be tried and to remain silent was harmless error and no corrective action is required.
1 uDECREE
For the foregoing reasons, we find no merit in defendant’s claims that the evidence was insufficient to support his forcible rape conviction or that he was prevented from confronting his accuser by the trial court’s granting of the State’s motion in limine. Accordingly, we affirm defendant’s conviction and remand for the trial court to give defendant written notification of the sex offender registration requirements.

CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS

. At the multiple bill hearing, the State presented evidence of defendant's underlying forcible rape conviction and his three predicate convictions. In adjudicating defendant a multiple offender, the trial court referenced the multiple offender statute relating to fourth felony offenders. La. R.S. 15:529.1(A)(4)(b). The trial court specifically found that defendant’s aggravated battery conviction was a crime of violence, his carnal knowledge of a juvenile was a sex offense, and his possession with intent to distribute marijuana conviction was a violation of the Uniformed Controlled Dangerous Substance Law punishable for ten years or more. The trial court then found defendant to be a “triple lifer" and sentenced defendant to life imprisonment as required by the habitual offender laws. Any confusion as to whether defendant was found to be a third felony offender or fourth felony offender is of no consequence in this case because the same sentence was mandated under the habitual offender laws. When either the third or fourth felony and two of the prior felonies are felonies defined as a crime of violence, a sex offense when the victim is under the age of 18, or a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, the law requires the defendant to be imprisoned for life without benefits. See La. R.S. 15:529.1(A)(3)(b) and (4)(b).

. Initials are used under the authority of La. R.S. 46:1844(W)(3), which allows the Court to identify a victim of a sex offense by using his or her initials.

. While we recognize that defendant ultimately received a life sentence in this case, no distinction has been made between those defendants with life sentences and those who have received less than life sentences for the purposes of the required written notice of La. R.S. 15:543. See State v. Smallwood, 09-86 (La.App. 5 Cir. 7/28/09), 20 So.3d 479, 491, ■writ denied, 09-2020 (La.9/24/10), 45 So.3d 1065.