GRAVOIS, J.
Defendant, Ricky J. Gros, appeals his convictions and sentences for two counts of sexual battery of a juvenile under the age of thirteen and one count of indecent behavior with a juvenile under the age of thirteen. Specifically, he argues that the trial court erred in granting the State's motion in limine that prohibited defendant from questioning one of the victims about her allegations of sexual abuse against individuals other than defendant. For the following reasons, we affirm defendant's convictions and original sentences, affirm defendant's habitual offender stipulation, vacate defendant's habitual offender sentence, and remand the matter for resentencing under the habitual offender stipulation in accordance with this opinion, and for correction of the commitments as noted herein.
PROCEDURAL HISTORY
On June 5, 2014, a Jefferson Parish Grand Jury indicted defendant, Ricky J. Gros, with two counts of sexual battery of a known juvenile under the age of thirteen (D.O.B. 5/17/1999) in violation of La. R.S. 14:43.1 (counts one and two), and one count of indecent behavior with a known juvenile under the age of thirteen (D.O.B. 7/19/2001) in violation of La. R.S. 14:81 (count three). Defendant pled not guilty to the charges at his arraignment on July 31, 2014. On September 9, 2016, the State filed a motion in limine to preclude questioning of one of the victims about prior allegations of sexual assault against individuals other than defendant, pursuant to La. C.E. art. 412. The motion was heard and granted on September 12, 2016.
Trial commenced the next day on September 13, 2016 before a twelve-person jury, which on September 14, 2016 found defendant guilty as charged on all counts. On October 12, 2016, the trial court sentenced defendant on count one (sexual battery) to ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence; on count two (sexual battery) to twenty-five years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence; and on count three (indecent behavior with a juvenile) to ten years imprisonment at hard labor, with the first two years of the sentence to be without the benefit of probation, parole, or suspension of sentence. The trial court further ordered the sentences to run concurrently. After sentencing on October 12, 2016, the State filed a habitual offender bill of information on count three, alleging defendant to be a second felony offender, to which defendant stipulated on November 14, 2016. The trial court then vacated defendant's sentence on count three and resentenced defendant as a second felony offender *450 pursuant to La. R.S. 15:529.1 to twenty-five years imprisonment at hard labor without the benefit of probation or suspension of sentence, to run concurrently with his other sentences. On December 12, 2016, defendant filed a Motion for Appeal,[1] which was granted by the trial court on December 13, 2016. This appeal followed.
FACTS
In October 2010, Detective Kay Horne with the Jefferson Parish Sheriff's Office Personal Violence Unit was assigned the investigation of defendant, involving allegations of sexual abuse made by two juvenile victims, D.M. and T.W.[2] Detective Horne first followed up with T.L., the mother of T.W., who initially reported the allegations to the police.[3] At trial, T.L. testified that on October 21, 2010, her daughter T.W. disclosed to her that defendant[4] had sexually abused her when she was eleven years old.
Detective Horne contacted T.L. and set up a forensic interview for T.W., which occurred on November 8, 2010. From information T.W. revealed in her forensic interview, Detective Horne learned of another victim, D.M., who is T.W.'s cousin, and contacted her mother, D.B., about the allegations and subsequently set up a forensic interview with D.M. Both T.W.'s and D.M.'s forensic interviews were videotaped, admitted into evidence, and published to the jury.
At trial, T.W., who was seventeen years old at that time, testified that when she was between the ages of six and nine, she would regularly go to her aunt D.G. and defendant's house, about two to three times a week. She described that when she would go to their house, defendant would "put his hands underneath [her] pants and underneath [her] underwear, and he would touch [her] vagina and he would move his hands around [her], and he would move it inside of [her]." She recalled that this behavior would occur when they were in the living room on the sofa with her sitting on defendant's lap. She testified that she finally told her aunt about the abuse. Her *451 aunt told T.W. that she would "take care of it," but she never did. T.W. described that the abuse stopped because she stopped going over to defendant's house.
At trial, D.M., who was fifteen years old at that time, testified that she stopped going to her grandmother (D.G.) and defendant's house "because of the incident." She described that defendant would touch her in her "vaginal area," but could not recall how old she was or how many times this behavior occurred. She similarly testified that this abuse occurred at defendant's house while they were sitting on the sofa.
Anne Troy, a nurse practitioner at Children's Hospital, who was qualified as an expert in the field of forensic pediatrics and child abuse, including physical and sexual abuse, as well as delayed disclosure, testified that she examined both T.W. and D.M. In November 2010, she examined T.W. and concluded that she gave a "clear and detailed history of sexual abuse" by defendant "involving digital genital contact over 20 times at her aunt's home in Marrero, from the age of 7 until 10" and that her cousin D.M. was "abused simultaneously" at age nine. Ms. Troy examined D.M. on September 17, 2011 and D.M. told her that "she was touched in her genital area" and that "it was on top of her underwear."
After both victims' forensic interviews, Detective Horne contacted defendant and set up an interview with him on February 6, 2012.[5] After being advised of his rights under Miranda ,[6] he provided a statement, denying the allegations made by T.W. and D.M. He did mention an incident with D.M. where he felt "by her panties" to see if she had urinated, but denied touching her inappropriately. Detective Horne explained that after the interview, she tried to contact defendant again but was unsuccessful. Later, she applied for an arrest warrant and arrested defendant on March 11, 2013. After his arrest, defendant gave another statement to Detective Horne, continuing to deny the allegations, but said "they must have mistaken horseplay for inappropriate touching." Detective Horne commented that based on her experience, that "[m]ost times when people are being accused of [sexual abuse], they down play it and say that it's horseplay and not actually touching inappropriately."
Defendant also testified on his own behalf. In his testimony, he maintained that these allegations made by both victims were "totally false." Defendant presented the testimony of his wife, D.G., and his mother-in-law, B.M. D.G. testified regarding the implausibility of the time frame in which these allegations occurred in that D.M. visited them less often after Hurricane Katrina in 2005. B.M. testified that she did not believe either of the victims, who are her great-granddaughters.
ASSIGNMENT OF ERROR
Motion in limine under La. C.E. art. 412
In his only assignment of error, defendant argues that because there was no physical evidence to corroborate the allegations made by either T.W. or D.M., and the case turned on the credibility of these witnesses, defendant should have been allowed to question T.W. about her prior accusations of sexual assault. Defendant avers that the trial court erred in granting *452 the State's motion in limine and that this ruling was not harmless because the jury's verdict rested entirely on their perception of the victim's veracity. Defendant argues the trial court erred in finding that he did not meet his burden because the evidence he presented could lead a reasonable juror to conclude that T.W. had fabricated the previous allegations of sexual abuse.
On September 9, 2016, the State filed a motion in limine seeking to preclude any questioning of T.W. regarding prior allegations of sexual conduct perpetrated against her under La. C.E. art. 412. The State specifically referred to T.W.'s disclosure that was made in her forensic interview that a friend, "Anthony," had tried to "rape her" in a tent in her backyard. She asserted that "Anthony" tripped her into a tent that was in her backyard and tried to pull down his and her pants. The State asserted that this was the entirety of the disclosure and the matter was never fully investigated by the police. The State also referred to T.W.'s other disclosure given in her forensic interview that another juvenile, D.N., had attempted to "touch her boobs." The State asserted that D.N. gave a statement to the authorities, during which he admitted to touching T.W.'s breast area, but not in a malicious way. The State in its motion argued that neither exception to La. C.E. art. 412 was applicable and that the defense had presented no evidence that these allegations were false.
At the hearing on the matter held on September 12, 2016 defense counsel responded that the intent in cross-examining the witness regarding these matters would be to "test the veracity of the testimony," and not to show promiscuity or consent. Defense counsel cited State v. Smith , 98-2045 (La. 9/8/99), 743 So.2d 199, as controlling, arguing that he was not barred from introducing evidence to test the veracity of the alleged victim's testimony and that the defense only had to show that a reasonable trier of fact could find the previous reports false. He alleged that he could meet this burden and argued that the allegations given in her forensic interview, by their seeming inconsistent nature speak for themselves, that a "reasonable trier of fact could come to the conclusion that the reporting is false." However, at the hearing, defendant did not introduce any evidence aside from the allegations themselves to support his claim that they were false.
The trial court ultimately granted the State's motion, including the redaction of the forensic interview video containing these allegations, finding defendant did not meet his burden because "there was nothing in the CAC video that this Court reviewed that indicated that the allegations that were made by the alleged victim are false."
La. C.E. art. 412 prohibits evidence regarding the past sexual behavior of the victim in sexual assault cases, except (1) when there is an issue of whether the accused was the source of semen or injury, and (2) when the past sexual behavior is with the accused and there is an issue of whether the victim consented to the charged sexually assaultive behavior. La. C.E. art. 412 does not apply when a defendant attempts to use evidence of a victim's false allegations of improper sexual behavior to impeach the victim's credibility. State v. Smith , 98-2045 (La. 9/8/99), 743 So.2d 199, 202-03. However, the admissibility of such evidence is still subject to all other standards for admissibility under La. C.E. arts. 403, 404, 607, 608, and 613. State v. Bolden , 03-0266 (La. App. 5 Cir. 7/29/03), 852 So.2d 1050, 1061-62 ; State v. Wallace , 00-1745 (La. App. 5 Cir. 5/16/01), 788 So.2d 578, 587, writ denied , 01-1849 (La. 5/24/02), 816 So.2d 297.
The relevant inquiry here is whether reasonable jurors could find, based on the *453 evidence presented by the defendant, that the victim had made prior false accusations. State v. Smith , 743 So.2d at 203. Assuming that burden has been met, all other standards for the admissibility of evidence apply. Id. ; La. C.E. arts. 403, 404, 607, 608 and 613. The trial court's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Hernandez , 11-712 (La. App. 5 Cir. 4/10/12), 93 So.3d 615, 628, writ denied , 12-1142 (La. 9/28/12), 98 So.3d 834.
In Smith , the victim admitted that she made prior accusations of improper sexual behavior and two witnesses corroborated that fact. At least one independent witness testified that the victim recanted those accusations. State v. Smith, 743 So.2d at 200-01, 203. Smith is distinguishable from the instant case in that the defense herein offered no evidence that the victim ever retracted or recanted the prior allegations of abuse, and there was no independent witness to testify that the allegations were false.
Further, in State v. Bryant , 12-591 (La. App. 5 Cir. 2/21/13), 110 So.3d 1191, 1197, writ denied , 13-0648 (La. 10/11/13), 123 So.3d 1218, the State filed a motion in limine under La. C.E. art. 412 seeking to prohibit the defendant from introducing evidence of the victim, M.P.'s, past sexual history, including any past allegations of sexual abuse by a person other than defendant. At the hearing on the motion, the State introduced the transcribed statements of M.P. and the suspect relating to the incident into evidence. Based on M.P.'s allegations, the defendant in that incident was arrested for carnal knowledge of a juvenile. In his statement, the defendant, who was 19 years old, admitted to having sex with M.P., who was 14 years old. Defendant offered no evidence to show that any of M.P.'s statements regarding the incident were false, and the trial court granted the State's motion. Id. at 1197-1198.
In Bryant , this Court found that the trial court properly granted the State's motion in limine and prohibited the defendant from questioning the victim about her allegations of sexual abuse against individuals other than the defendant. This Court cited La. C.E. art. 412, which prohibits evidence of the victim's past sexual behavior, but found that none of the exceptions to Article 412 applied; specifically, there was no issue as to whether the defendant was the source of semen or injury and the evidence of past sexual behavior was with persons other than the defendant. Finally, this Court reasoned that there was no evidence the victim's prior allegations of improper sexual behavior were false. State v. Bryant , 110 So.3d at 1198.
This Court further noted that although the defendant argued that the incident impacted M.P.'s credibility, he never showed, or even attempted to show, that her allegations were false. This Court found that the defendant's mere assertion that M.P.'s allegations were false did not meet the Smith test for admissibility. Bryant , 110 So.3d at 1198 (citing State v. Wallace , supra . )
Likewise, we find that the trial court properly granted the State's motion in limine and prohibited defendant from questioning the victim about her allegations of sexual abuse against individuals other than defendant. First, none of the exceptions to La. C.E. art. 412 apply in this case; specifically, there was no issue as to whether defendant was the source of semen or injury and the evidence of past sexual behavior was with persons other than defendant. Second, at the hearing on the motion, defendant only argued that the allegations were inconsistent which indicated they were unreliable, and thus, the *454 jury could find that these allegations were false. Defendant's mere assertion that T.W.'s allegations were false does not meet the Smith test for admissibility; there was no evidence the victim's prior allegations of improper sexual behavior were false.
Considering the foregoing, we find that the trial court did not err in granting the State's motion in limine . This assignment of error is without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux , 312 So.2d 337 (La. 1975), and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). The following matters require corrective action.
The transcript reflects that when the trial court resentenced defendant under the habitual offender statute, it imposed a twenty-five-year sentence on count three, without the benefit of probation or suspension of sentence. The habitual offender statute, La. R.S. 15:529.1(G), provides that any sentence imposed under its provisions "shall be at hard labor without benefit of probation or suspension of sentence." Thus, the habitual offender statute does not impose a parole restriction. However, the underlying offense in the reference statute, La. R.S. 14:81, imposes a parole restriction. It requires that at least two years of the sentence imposed shall be without the benefit of probation, parole , or suspension of sentence. The restrictions on parole eligibility imposed on habitual offender sentences under La. R.S. 15:529.1"are those called for in the reference statute." State v. Esteen , 01-879 (La. App. 5 Cir. 5/15/02), 821 So.2d 60, 79, n. 24, writ denied , 02-1540 (La. 12/13/02), 831 So.2d 983. Therefore, we find that the trial court erred by not restricting parole eligibility on defendant's enhanced sentence for at least two years.[7] Since the trial judge did not restrict parole in any way in imposing the enhanced sentence, and the statute requires an exercise of the trial court's sentencing discretion in limiting parole eligibility, we vacate defendant's enhanced sentence on count three and remand the matter for resentencing in accordance with the underlying statute. See State v. Smith , 09-100 (La. App. 5 Cir. 8/25/09), 20 So.3d 501, 508-09, writ denied , 09-2102 (La. 4/5/10), 31 So.3d 357.
Also, both the original Uniform Commitment Order and the Uniform Commitment Order from defendant's enhanced sentencing indicate that the offense date was May 17, 2006; however, the record reflects that the offenses occurred on multiple dates: count one-on or between May 17, 2006 and August 14, 2006; count two-on or between August 15, 2006 and May 16, 2009; count three-on or between July 19, 2008 and July 19, 2010. Because of these inconsistencies, on remand, we instruct the trial judge to correct the Uniform Commitment Orders. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected Uniform Commitment Orders to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. See State v. Long , 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 (citing La. C.Cr.P. art. 892(B)(2) ).
CONCLUSION
For the foregoing reasons, defendant's convictions and original sentences are affirmed, defendant's habitual offender stipulation *455 is affirmed, defendant's habitual offender sentence is vacated, and the matter is remanded for resentencing under the habitual offender stipulation in accordance with this opinion, and for correction of the Uniform Commitment Orders as noted herein.
CONVICTIONS AND ORIGINAL SENTENCES AFFIRMED; HABITUAL OFFENDER STIPULATION AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; REMANDED FOR RESENTENCING WITH INSTRUCTIONS AND CORRECTION OF COMMITMENTS

In his Motion for Appeal, defendant seeks to appeal the verdict rendered on September 14, 2016, and the sentences imposed on October 12, 2016 and November 14, 2016. La. C.Cr.P. art. 914(B) requires a defendant to make or file a motion for an appeal no later than thirty days after the rendition of the judgment or ruling from which the appeal is taken or no later than thirty days from the ruling on a motion to reconsider sentence should such a motion be filed. In the instant case, defendant was convicted on September 14, 2016 and was originally sentenced on October 12, 2016. Defendant's enhanced sentence on count three was imposed on November 14, 2016. He did not file a motion to reconsider sentence. He filed a Motion for Appeal on December 12, 2016, more than thirty days after his original sentencing. On December 13, 2016, the trial judge granted the appeal. At some point, the Louisiana Appellate Project was appointed to represent defendant. The State did not object to the untimeliness of the appeal as to the original proceedings. Instead of remanding this matter to the trial court to grant defendant an out-of-time appeal as to the original proceedings, we address defendant's appeal in its entirety to avoid "further useless delay." See State v. Gros , 13-879 (La. App. 5 Cir. 3/26/14), 138 So.3d 763, 765, n.2, writ denied , 15-1138 (La. 5/20/16), 191 So.3d 576 ; State v. Babineaux , 08-705 (La. App. 5 Cir. 1/13/09), 8 So.3d 621, 623.

In accordance with La. R.S. 46:1844(W)(3), the victims, both of whom are minors, and the victims' families, will be referred to by their initials to protect the victims' identities.

T.L. called 9-1-1 reporting the allegations, and Deputy Shannon Sims responded and spoke with her and her daughter, T.W., who described that she was sexually assaulted.

Defendant was the boyfriend of T.L.'s aunt at the time of the allegations; they subsequently married.

Detective Horne explained that at the time the Personal Violence Unit had a large workload, and had more time-sensitive cases, which explained a noticeable time gap between the initial disclosure and further steps in the investigation.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The commitment/minute entry, however, states that the first two years of the sentence were imposed with a parole disability. Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch , 441 So.2d 732, 734 (La. 1983).