HANS J. LILJEBERG, Judge.
' ^Defendant, J.M.,[1] was charged by bill of information with one count of molestation of a juvenile under the age of 13 (count one), in violation of La. R.S. 14:81.2, and one count of indecent behavior with a juvenile under the age of 13 (count'two), in violation of La. R.S. 14:81. A trial was held, and a jury found defendant guilty as charged on count one and guilty of the lesser charge of attempted indecent behavior on count two. Defendant was sentenced to 25 years at hard labor without benefit of probation, parole, or suspension of sentence on count one and ten years at hard labor with two years to be served without benefit of probation, párole or suspension of sentence on count two. The court ordered the sentences to run concurrently with each other. Defendant now appeals his convictions and sentences.

J^FACTS

The victim in this case is defendant’s daughter, B.M. At trial, S.M., the mother of B.M. and the wife of defendant, testified that prior to March 26, 2012, B.M., S.M.’s minor son C.M., and S.M. all lived with defendant and his mother, M.M., in Luling, Louisiana. She stated' that B.M. was two or three years old'when they moved there. On March 25, 2012, S.M. decided to leave M.M.’s house, because she was unhappy about everything, including her marriage. According to S.M., she was attempting to call her father to ask him to pick her and the children up when M.M. pushed her and attempted to take the phone because she did not want her to leave. S.M. explained that after M.M. pushed her, she was trying to catch her balance and knocked M.M.’s glasses off. She testified that M.M. called the police because she felt that S.M. had assaulted her. After the police arrived, S.M. was able to leave with the children.
S.M. explained that while they were staying with a friend on the night that they left M.M.’s house, B.M. approached her and stated, “Well, I’m glad we’re gone because something happened.” She explained that B.M. did not disclose any specifics at that time. However, S.M. testified that' something happened between B.M. and defendant in 2004 involving the court system, so she asked her cousin, C.S., to pick them' up the next day, and they took B.M. to the police. After Sergeant Sampson interviewed B.M., without *1084 S.M. present, S.M. brought B.M. to Children's Hospital for an examination.
Sergeant Roanne Sampson of the St. Charles Parish Sheriffs Office testified that on March 26, 2012, S.M. and B.M., who was 12 years old at the time, came to her office. After Sergeant Sampson interviewed S.M., she met with B.M. independently, and B,M. provided a disclosure to her. Based on B.M.’s disclosure, Sergeant Sampson advised S.M. to bring her to Children’s Hospital for a medical | ¿examination. On March 27, 2012, Sergeant Sampson watched on a monitor in a separate room as Lieutenant Kinler -conducted a video-recorded forensic interview of B.M. On April 19, 2012, Dr. Jackson examined B.M. at Children’s. Hospital and then informed Sergeant Sampson that B.M. made a disclosure. As a result, Sergeant Sampson conducted another audio-recorded statement with B.M. on May 4, 2012. After B.M.’s second statement to Sergeant Sampson, Lieutenant Kinler conducted a second video-recorded forensic interview of B.M. Sergeant, Sampson arrested defendant on July 6, 2012.
Sergeant Sampson testified that she had previously arrested defendant in. 2004 based on allegations that he had molested B.M. Sergeant Sampson stated that defendant provided an audio-recorded statement regarding the 2004 incident, in which he admitted to “accidentally” touching B.M.’s vagina with his mouth. Sergeant Sampson also testified that the 2004.case against defendant began when B.M. made a disclosure to a babysitter, not because of domestic separation.
Lieutenant Rene Kinler, a juvenile investigations division supervisor and forensic interviewer for the St. Charles Parish Sheriffs Office, testified that she participated in the investigation in this case. In her first forensic interview on March 27, 2012, B.M. stated that defendant would enter her bedroom at night after first checking that the other bedroom doors were closed. According to B.M., defendant would then ask if he could “play,” which she explained meant to touch her body parts. B.M. stated that she replied in the negative, so defendant would leave her room. B.M. explained that this occurred approximately 20 times per month, and it started happening about a year pri- or to her interview.
In her first forensic interview, B.M. also stated that the night they moved out of the house where defendant lived, her mother asked if anything happened between her and defendant. According to B.M., she told her mother that defendant Lhad been asking if he could touch her, but she replied in the negative. B.M. stated that defendant told her every night not to tell anyone what he had been asking her. B.M. stated that she told her mother that she knew defendant was asking because he was a sex offender. She explained that she learned that defendant was a sex offender when a child on her bus saw defendant’s photograph on the internet.
Lieutenant Kinler conducted a second forensic interview of B.M. on June 26, 2012. In this interview, B.M. stated that she remembered one night when defendant asked her if she wanted to “play,” and she responded in the negative. According to B.M., defendant waited until everyone was asleep and asked her to “play” when she was half-asleep, ^but she said no. B.M. stated that when she woke up an hour qr two later, her underwear was gone, the blanket was off of her, her shirt was pulled up, and her door was open.
During this second forensic interview, B.M. also explained that defendant would sometimes touch, squeeze, and rub her “top area.” She stated that while one hand was touching her breast, defendant *1085 would touch himself by moving back and forth with his hand in his pants', and she could hear a “crunching” sound “like [sic] paper towel.” B.M. stated that this would happen 15 to 20 times per month. She explained that- one night when she was half-asleep, she felt him touching her breast and she found her underwear off that night. B.M. stated that when defendant touched her breast, it would be skin on skin.
Dr. Jamie Jackson was accepted as an expert in the field' of child abuse pediatrics. Dr. Jackson testified that on April 19, 2012, she examined B.M. and took a history from her. ■ She testified that B.M. disclosed sexual abuse by her father involving contact with her breasts, which was always on her skin. Dr. Jackson explained that B.M. demonstrated that her father touched her breast, “[l]ike a cup.” According to Dr. Jackson, B.M. stated that her father told her not to |Rtell anyone. B.M. also stated that the abuse occurred while she was sleeping. Dr. Jackson stated that B.M. further disclosed that her father had his hand in his pants in his private area when he touched her breast. Dr. Jackson testified that B.M.’s physical exam resulted in non-specific findings, which neither confirmed nor denied maltreatment. Dr. Jackson- also explained that children often say that a person has done something to them while they were asleep as a coping mechanism.
At trial, B.M., who was 14 years old at the time, testified that when she moved out of the house where her grandmother and father lived in March of 2012, she disclosed to her mother that something had been occurring between her and her father. B.M. stated that her mother brought her to the sheriffs office and she spoke with Sergeant Sampson. She testified that everything in the videos of her forensic interviews was the truth. B.M. testified that when'she was living -with her father, she was not afraid of him. However, she admitted that she told the officer that she was afraid of her father because, approximately a week before they left, he threatened to kill her if she told anyone what he had done.
C.S., a cousin of S.M., testified regarding the previous allegations against defendant in 2004. C.S. testified that her daughter was babysitting B.M. one night, when B.M. disclosed: to C.S.’s daughter that defendant had done something to her. C.S. testified that the next morning, B.M. disclosed to her that “my daddy licks my chinas,” and pointed down to her vaginal area. C.S. reported the incident to her boyfriend who worked for the Sheriffs Office, and he made a report to the police.
M.M., defendant’s mother, testified on behalf of the defense. She, stated that B.M. confided in her about different things but did not tell her of any allegations that defendant had done something to her. M.M. testified that between March and July of 2012, she petitioned the court for custody of the children because she did not want the children raised by S.M.’s family. Although she signed an amended 17petition for custody,.which stated that an award of joint or sole custody to defendant would result in substantial harm to the children, M.M. testified that she signed the document without reading it.
Defendant testified on his own behalf. He stated that before S.M. and the children left his mother’s house on March 25, 2012, B.M. was never uncomfortable around him and she would play board games with him. Defendant denied all of the allegations of sexual abusé.'

LAW AND DISCUSSION

On appeal, in his .first assignment of error, defendant argues that the evidence ■was insufficient to prove beyond a reasonable doubt that he “committed the crimes of *1086 molestation .of a juvenile and attempted indecent behavior with a juvenile. In this assignment, -defendant claims that the State failed to prove that he committed any lewd or lascivious act or that he used influence by supervision, care, control,, or custody of B.M. He claims that B.M. imagined or dreamed the acts that she reported to the police and Dr. Jackson. Defendant does not dispute that the State proved the other required elements of the crimes charged. It is undisputed that defendant was over the age of 17, that the victim was under the age of 17 at the time of the offense, and that defendant was more than two years older than the victim.[2]
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or' reject, in |swhole or-in part, the testimony of any witnesses. State v. Roca, 03-1076, p. 11 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874, writ denied, 04-583 (La.7/2/04), 877 So.2d 143. A reviewing court may impirige on the fact-finding function of the jury only to the extent necessary to assure the Jackson standard of review. It is not the function of an appellate court to assess credibility or reweigh evidence. Id.
f In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier or fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633, pp. 4-5 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual- offense, even where the State does not introduce.medical, scientific, or physical evidence to prove the commission, of the offense. Roca, 03-1076 at pp. 11-12, 866 So.2d at 874; State v. Hotoph, 99-243, p. 13 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-150 (La.6/30/00), 765 So.2d 1066.

Molestation of a Juvenile

The bill of information charges defendant in count one with molestation of a juvenile, as follows:
On or about between 11/02/2010 and 3/26/2012, in the Parish of St. Charles, [J.M.] committed the offense of R.S. 14:81.2 MOLESTATION OF JUVENILE, by the commission of a lewd and lascivious act with and upon a minor child under the age of 13, there being an age difference of greater than 2 years between the defendant and the juvenile, with the intent of arousing the sexual desires of either party by the use of influence by virtue of defendant’s care, custody, control and supervision of the juvenile. TO-WIT: -BY GROPING HER BREASTS
La. R.S. 14:81.2(A)(1) provides in pertinent part that:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence' of any child under the age of seventeen, bwhere there is an age difference of greater than two years between the two persons, which the intention of arousing *1087 or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of - influence by virtue -of a position of control or supervision over the juvenile.
[[Image here]]
To convict a defendant of the crime of molestation of a juvenile, the State must prove beyond a reasonable doubt'that: 1) the defendant was over the age of 17; 2) the defendant committed a lewd or lascivious act upon the person or in the presence of a child under the áge of 17; 3) the defendant was more than- two years older than the victim;, 4) the defendant had the specific intent to arouse or gratify his sexual desires or those of his victim, and 5) the defendant committed-.the lewd or lascivious act by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm,’or;by the use of influence by virtue of a position of control or supervision over juvenile.. State v. Onstead, 03-1413, p. 8 (La.App. 5 Cir. 5/26/04), 875 So.2d 908, 913.
The bill of information alleged.that defendant committed a lewd and lascivious act upon the victim by groping her breasts. A lewd or lascivious act is one which tends to excite lust and to .deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried .on in.,a wanton manner. Stec, 99-633 at p. 6, 749 So.2d at 787; State v. Holstead, 354 So.2d 493, 497-98 (La.1977).
At trial, B.M. testified that -after moving out of the house where defendant lived, she disclosed to her mother that something had been occurring between her and defendant. She also testified that defendant threatened to kill her if she. told anyone. In her second video-recorded forensic .interview, B.M. stated that 11fldefendant would touch, squeeze, and rub her breast, and it was skin on skin.. She explained that this conduct would occur 15 to 20 times per month.
In addition, Dr. Jackson testified that B.M. disclosed sexual abuse by defendant involving contact with her breast on her skin. Dr. Jackson explained that B.M. demonstrated that her father touched her breast “like a cup,” and that her father told her not to tell anyone.
Defendant argues that B.M. stated that she “dreamed” the events, which does not establish that any actual conduct occurred. However, Dr. Jackson explained that children often state that they were asleep when abuse occurred as a coping mechanism. Also, B.M. stated that she saw defendant, and she related information that supported that she was awake when the conduct occurred. Defendant also argues that there weré no physical' findings of abusé.. ’ However, Dr. Jackson testified that between 90 and 95 percent of the time there are no physical findings. The "results of B.M.’s physical exam neither confirmed nor denied maltreatment.
Although defendant denied performing these acts, the jury obviously found the State’s witnesses to be credible and rejected defendant’s denials. Based on the evidence presented of defendant’s , actions, a rational trier of fact could have found beyond a reasonable doubt that defendant committed a lewd and lascivious act upon B.M. by groping her breasts.
,The record also shows that defendant performed these acts by virtue of his position of control and supervision over B.M. Defendant is B.M.’s father, and he testified that he primarily cared for the children, especially in the evenings. Defendant’s mother, M.M., also testified that defendant participated in the care of the .children.
*1088 ^/Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved beyond a reasonable doubt all of the elements of molestation of a juvenile, including the elements of a lewd or lascivious act and influence by supervision, care, control, and custody. Accordingly, we And that the evidence was sufficient to support defendant’s conviction on count one.

Attempted Indecent Behavior

The bill of information charges defendant in count two with indecent behavior with a juvenile, in violation of La. R.S. 14:81, as follows:
On or about between 11/2/2010 and 3/26/2012, in the Parish of St. Charles, [J.M.] committed the offense of R.S. 14:81 indecent behavior, by the commission of a lewd and lascivious act in the presence of or upon a minor child under the age of 13, there being an age difference of greater than 2 years between the defendant and the juvenile, with the intent of arousing the sexual desires of either party by the use of influence by virtue of defendant’s care, custody, control and supervision of the juvenile. TO-WIT: asking the juvenile to engage in indecent behavior and masturbating himself while he stood by the victim’s bed.
Defendant was convicted of the lesser included charge of attempted indecent behavior, in violation of La. R.S. 14:81 and 14:27. La. R.S. 14:81(A)(1) provides in pertinent part that:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.
[[Image here]]
La. R.S. 14:27(A) provides that:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the | ^offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Accordingly, to support a conviction for attempted indecent behavior with a juvenile, the State has to show beyond a reasonable- doubt that defendant specifically intended to commit a lewd or lascivious act upon the victim or in the victim’s presence and did an act in furtherance thereof. State v. Lirette, 11-1167, p. 13 (La.App. 6 Cir. 6/28/12), 102 So.3d 801, 810, writ denied, 12-1694 (La.2/22/13), 108 So.3d 763.
The bill of information alleges that defendant committed a lewd and lascivious act in the presence of a juvenile by asking the juvenile to engage in indecent behavior and masturbating while he stood by the victim’s bed. A review of the record shows that a rational trier of fact could have found beyond a reasonable doubt that defendant committed or attempted to commit a lewd or lascivious act.
In her forensic interviews, B.M. stated that defendant would ask to touch her body parts approximately 20 times per month. She also stated that defendant would touch himself by moving back and forth with his hand in his pants,' and she heard a “crunching” sound, which she believed was a “paper towel.” B.M. explained that defendant would have one hand in his pants and one hand on her *1089 breast. She stated that this conduct occurred between 15 and 20 times per month. Dr. Jackson also testified that B.M. disclosed that defendant had his hands in his pants in his private area when he touched her breast.
Defendant argues that the State failed to rebut the reasonable hypothesis that the victim’s allegations were based on the accounts of the victim’s mother and defendant’s status as a sex offender. However, the record reflects that the jury was presented with the defense’s theory of the case. Apparently, the jury found the | iaState’s witnesses to be credible and did not believe that B.M.’s allegations were based oh her mother’s accounts or defendant’s status as a sex offender.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt that defendant was guilty of attempted indecent behavior with a juvenile. Defendant’s first assignment of error is without merit.
In his second assignment of error, defendant asserts that the trial court erroneously admitted evidence pursuant to La. C.E. art. 412.2. He claims that the trial court erred by allowing the State to introduce evidence at trial pertaining to a 2004 ease against defendant in which he was charged with molesting B.M. when she was four years old. Defendant asserts that the jury was not informed of the problematic circumstances that resulted in his Alford[3] plea to a lesser charge, that there was an overwhelming probability that the jury confused the evidence from the 2004 case and the evidence from the present case, and that the State introduced the other crimes evidence to show that defendant acted in conformity therewith.
On May 21, 2013, the State filed its notice of intent to use evidence of prior sexual acts against a child' to show defendant’s .lustful disposition toward children pursuant to La. C.E. art. 412.2. After a hearing on May 30, 2013, the trial court ruled that the notice requirement was satisfied and in compliance with La. C.E. art. 412.2. • On November 12, 2013, defendant made an oral motion to suppress his statement in the 2004 case, which the trial court did not consider bécause a written motion had not been filed in response to the State’s notice of intent. At trial, the judge allowed the State to introduce evidence of defendant’s previous sexual offense against B.M.
La. C.E. art. 412.2(A) provides that:
114A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in 403,
La. C.E. art. 403 provides that: “[although relevant, evidence may be excluded if its probative value, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” Absent a clear abuse of discretion, the trial judge’s determinations concerning rólevancy and admissibility should not be overturned. State v. Cosey, 97-2020, p. 13 (La.11/28/00), 779 So.2d 675, 684, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001).
*1090 In State v. Hernandez, 11-712, p. 3 (La.App., 5 Cir. 4/10/12), 93 So.3d 615, 618, writ denied, 12-1142 (La.9/28/12), 98 So.3d 834, the defendant was charged with aggravated rape of his stepson, who was 11 years old at the time of the incident. At trial, the. State also introduced evidence showing that the victim was five or six years old when the defendant first raped him. This Court found that the other crimes evidence was relevant to show that the defendant had a lustful disposition toward children. Id. at p. 9, 93 So.3d at 622. This Court also found that the probative value of the other crimes evidence was not substantially outweighed by unfair prejudice, confusion, undue delay, or waste of time. Further, this Court noted that the trial court gave a limiting instruction. Therefore, this Court found that the trial court did not err by admitting the other crimes evidence. Hernandez, 11-712- at pp. 9-10, 93 So.3d at 622-23.
hJn the present case, the evidence from the 2004 case, when B.M. was four years old, was relevant to show that defendant had a lustful disposition toward children. The probative value of this other crimes evidence was not substantially outweighed by unfair prejudice, confusion, undue delay, or waste of time. Further, it is noted that the trial court gave a limiting instruction immediately prior to the testimony of Sergeant Sampson,[4] immediately prior to the testimony of C.S.,[5] and in the court’s final jury instructions. In the final jury instructions, the trial judge instructed the jury as follows:
Evidence that the defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only fipr a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show the defendant’s lustful disposition toward young girls, or his propensity to sexually assault young girls who are under his care, custody, control, and supervision.
Remember, the accused is only on trial for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense previously.
*1091 1 ¶ (¡Considering the foregoing, we find that the trial court did not err by admitting this other crimes evidence. Accordingly, defendant’s second assignment of error is without merit.
In his third assignment of error, defendant argues that his right to present a defense was violated when the trial court denied his motion to continue the trial after the production of newly-discovered evidence by'the State, and when the trial court excluded said evidence which was critical to the theory of his defense. Defendant argues that his motion to continue the trial should have been granted to allow him.time to retain an expert in the area of suggestiveness. Defendant asserts that his defense was severely compromised, and the jury was denied facts critical to the hypothesis of innocence.
The record reflects that on February 10, 2014, one day prior to the commencement of trial, defendant filed a motion for continuance on the grounds that the State had only recently provided the defense with an audio-recording and a four-page transcript of the victim’s May 4, 2012 statement to Sergeant Sampson., The defense and the State both agreed that Sergeant Sampson had recently found the statement, and the prosecutor immediately provided it to the defense on the previous Thursday.
Defense counsel argued that this statement had additional detail that allowed an expert to testify regarding suggestiveness. The trial judge ashed defense counsel for the name of the expert, and counsel responded that he was not in a position to reveal the expert at that time. The State responded that the victim had provided several prior statements that were consistent with the May 4, 2012 statement, and that there was no element of surprise. Defense counsel replied that the May 4, 2012 statement was inconsistent. Defense counsel further argued that |]7the statement deviated from protocol because • it was taken.by law enforcement prior to the second forensic interview and,, as such, indicated suggestiveness. .
The trial court found that there was no additional information or new facts of the alleged incident contained in the May 4, 2012 statement. ' The court further noted that this matter, which had begun two years earlier, had been pending for “too long” and had been set for trial “too many times.” The' trial court denied defendant’s motion for' continuance and noted the defense’s objection.
At the discretion of the court, a timely-filed motion for continuance may be’ granted if there is good ground to continue. La.C.Cr.P. art. 712/ /Whether to grant or refuse a motion for a continuance rests within the sound' discretion of the trial judge, and a- reviewing court will not’ disturb such a determination'absent a clear abuse of discretion. State v. Simmons, 13-258, pp. 9-10 (La.App. 5 Cir. 2/26/14), 136 So.3d 358, 366, writ denied, 152 So.3d 151 (La.2014). Generally,, a conviction., will .not be reversed even on. a showing of an improper denial of a motion for a continuance abseñt a showing of specific prejudice., State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, 1077, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
In the present case, the defense had more than one year between defendant’s arraignment and the trial date to prepare for trial. Defendant had been provided with copies of B.M.’s other statements well before trial. Defendant has hot shown that the May'4, 2012 statement contained any new information that was pertinent to his defense or that the State’s failure to provide this statement to him earlier caused him any specific prejudice. Based on- the record before us, we find that the *1092 trial court did not abuse its discretion by denying defendant’s motioñ for continuance and exeluding this evidence. Defendant’s third assignment of error is without merit.
hJn his fourth assignment of error, defendant contends that the trial court erred in denying his motion for a mistrial. He argues that the scope of the State’s cross-examination of defendant’s mother was inappropriate when the State questioned her about the civil proceeding she instituted in 2012 seeking custody of the children. He complains that the State had not provided notice prior to trial that it intended to introduce evidence from a collateral civil proceeding and that this evidence unfairly surprised him and prejudiced his case.
Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive the defendant of a fair trial. State v. Ventris, 10-889, p. 20 (La.App. 5 Cir. 11/15/11), 79 So.3d 1108, 1123, writ denied, 13-1532 (La.4/17/14), 138 So.3d 616. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Massey, 10-861, pp. 7-8 (La.App. 5 Cir. 6/14/11), 71 So.3d 367, 372, writ denied, 11-1621 (La.4/20/12), 85 So.3d 1259.
La.C.Cr.P. art. 771 pirovides in pertinent part that:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
[[Image here]]
(2) WZhen the remark or comment is made by a witness or person other than a judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial should be granted under Article 771 only where the prejudicial 119remarks of the witness make it impossible for the defendant to obtain a fair trial. Ventris, 10-889 at p. 21, 79 So.3d at 1123.
In the present case, in response to defense counsel’s' questioning on direct examination, M.M., defendant’s mother, testified there was no indication that B.M. was uncomfortable, unsafe, or afraid of defendant when she lived with them. Defendant counsel also questioned M.M. regarding the petition she filed in 2012, seeking custody of the children, B.M. and C.M. On cross-examination, the prosecutor questioned M.M. regarding a statement in her amended petition for custody that an award of joint or sole custody to defendant would result in substantial harm to the children. After seeing her amended petition, M.M. explained that she signed the amended petition for custody without reading it.
At a bench conference, defendant moved for a mistrial, but the trial court denied the motion. The record reflects that defendant did not request an admonition.
Under the Louisiana Code of Evidence, a witness may be cross-examined on any matter relevant to any issue in *1093 the case, including credibility. ■ La. C.E. art. 611(B). Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. State v. Honore, 09-313, pp. 26-27 (La.App. 5 Cir. 1/12/10), 31 So.3d 485, 501. The ruling of the trial court as to the scope and extent of cross-examination should not be disturbed absent an abuse of the court’s broad discretion. Id. .
In;the present case, the State’s questioning of regarding .the civil custody proceeding was apparently for impeachment purposes and was not improper cross-examination. The trial court did not abuse . its discretion in denying landefendant’s motion for a mistrial. Accordingly, defendant’s fourth assignment of error is without merit.
In his fifth assignment of error, defendant argues that the sentences imposed were “unconstitutionally” excessive and that the trial court could have deviated below the mandatory minimum sentence pursuant to State v. Dorthey, 623 So.2d 1276 (La.1993).
Defendant was sentenced to 25 years at hard labor without benefit of probation, parole, or suspension of sentence on count one and ten years at hard labor with two years to be served without benefit of probation, parole or suspension of sentence on count two. These sentences were ordered to run concurrently with each other. Prior to imposition of the sentences, S.M., the mother of the victim, provided a statement to the court. Thereafter, the trial judge stated the following:
I’ve read the pre-sentence investigation and the recommendations contained therein. And also I’ve read all of the letters that your family has submitted on your behalf. -And yours is a particularly unfortunate case. Well first off, any time there’s a case like this where there’s a victim, that’s tragic. It’s'unnecessary. But the jury said it happened, and the court is convinced that it happened the way-that the jury found.
But the bottom line is the people in the State óf Louisiana through its legislature has deemed that what you’ve committed what you did, the acts that you committed were unlawful and it should be sanctioned. It should be sanctioned by loss of your freedom.
Now the letters I received show a very supportive family, a very loving family, a nurturing family, and a family of means that has educated people contained in that'family,'and it’s so'unfair because I’m telling his family this too ■that families pay more than the defendant pays in eases like this. And there’s nothing that any legal system can do to undo that.
After the judge explained the sentencing range on each count, he further stated that:
l^Now no matter what sentence I give, it’s a long sentence. The child will be an adult in due time. And her mother was right, you took something away frorn her she didn’t deserve to have taken.
Part of sentencing is for punishment, but it’s not to be vindictive, and I am not going to be vindictive about it. Everybody in the letters has asked for mercy. There’s no mercy here because of the sentence that the legislature has said— the minimum sentence that the legislature has said that court has to impose.
After the imposition of the sentences, the trial judge further stated that: “[n]ow, it doesn’t — it doesn’t nearly approach the *1094 maximum .that could have been, and that wasn’t recommended in the pre-sentence investigation. But no matter how you cut it, 85 and a half percent of 25 years is a long sentence.” Defense counsel objected to ,the sentences.
Defendant later filed a motion to reconsider- sentence on the basis that his sentence was excessive without raising any further specific grounds. The trial court denied his motion to reconsider sentence. This Court has held that the failure to file a motion to reconsider sentence, or to state, the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Alvarez, 08-558, p. 5 (La.App. 5 Cir. 8/31/10), 47 So.3d 1018, 1022.
The Eighth Amendment of the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense, or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
In reviewing a sentence for ex-cessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992). The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and thus, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
In the present case, defendant was convicted of molestation of a juvenile under the age of 13, in violation of La. R.S. 14:81.2. Defendant’s 25-year senténce is the mandatory minimum under La. R.S. 14:81.2(D)(1), which provides that molestation of juvenile under the age of 13 is punishable by imprisonment at hard labor for not less than 25 years nor more than 99 years at hard labor without benefit of probation; parole, or suspension of sentence.
It is presumed that a mandatory minimum sentence is constitutional. State v. Royal, 03-439, p. 11 (La.App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied, 03-3172 (La.3/19/04), 869 So.2d 849. To rebut the presumption of constitutionality, the defendant must show that: “[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances.” Id.
In the present case, defendant has failed to present any evidence or argue any specific mitigating factors to support a downward departure - from the [ ^mandatory minimum sentence. Defendant argues that the sentences imposed did not take into consideration the letters *1095 requesting leniency that his family and friends sent to the trial court, However, during the sentencing hearing, the . trial judge stated that he read the letters submitted by defendant’s family on his behalf. In addition, defendant asserts that the judge expressed an intent to impose a downward departure but ruled that he had no legal basis to reconsider the sentence. However, the record does not reflect that the trial judge was unaware that he could make a downward departure from the mandatory minimum sentence when warranted. Instead, it appears that the trial judge only expressed that the mandatory minimum was the least he could impose under the circumstances of the present case.
Specifically, the trial'judge stated that this case was unfortunate, tragic, and unnecessary, and that he was convinced that the incident happened as'the jury found. The trial judge agreed with the victim’s mother that defendant took something away from the victim that she did not deserve to have taken. The trial judge also explained that although he read -the letters requesting mercy, there is a minimum-. sentence decided by the legislature. After imposing sentences, the judge fur-, ther explained that the sentence did not approach the maximum, was not as recommended in the pre-sentence investigation, but was nevertheless a long sentence.
Because defendant has failed to show that a downward deviation from. defendant’s mandatory minimum sentence is warranted in this case, and he has failed to rebut the presumption of the constitution ality of the minimum sentence, we find that defendant’s 25-year sentence for molestation of juvenile under the age of 13 is not excessive.
| ^Defendant was also - convicted of attempted indecent behavior with a juvenile under 13 years of age in violation of La. R,S. 14:27 and La.. R.S. 14:81. (count two). Defendant’s ten-year sentence on count two was within the sentencing range allowed under the law. See La. R.S. 14:81(H)(2).
The imposition of a sentence, although within the statutory limits,- may still violate . a - defendant’s constitutional right against excessive punishment. State v. Ross, 13-924, p. 5 (La.App. 5 Cir. 5/28/14), 142 So.3d 327, 334. However, considering the facts and circumstances in the present-case, we find that, defendant’s 10-year sentence for attempted indecent behavior with a juvenile under the age of 13 is not grossly disproportionate to the offense or constitutionally excessive.
The trial court did not abuse its discretion in the imposition of defendant’s sentences. Accordingly, defendant’s fifth assignment of error is without merit.

ERRORS PATENT

Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request.
The record reflects that the offenses charged in this case were committed between. November 2, 2010 and March 26, 2012., However, the “State of Louisiana Uniform Commitment Order” indicates that the date of the offenses was “2012.” Therefore, we remand this matter for correction of the uniform commitment order regarding the offense date range. State v. Lyons, 13-564, p. 9 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41. We further direct the Clerk of. Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been *1096 sentenced and the ^Department of Corrections’ legal department. State ex rel. Roland v. State, 06-224 (La.9/15/06), 937 So.2d 846; see also La.C.Cr.P. art. 892(B)(2).

DECREE

For the foregoing reasons, we affirm defendant’s convictions and sentences. We also remand for correction of the uniform commitment order, and we direct the Clerk of Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER.

. In the interest of protecting minor victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), the judges of this Court have adopted a policy that this Court’s published work will use only the initials to identify the victim and any defendant or witness whose name can lead.to the victim’s identity (i.e., parent, sibling, or relative with the same last name as' the victim). Compare State v. R.W.B., 12-453 (La.12/4/12), 105 So.3d 54.

. The record reflects that defendant's date of birth is February 11, 1972. At trial, B.M. testified1 that her date of birth is November 2, 1999.

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. The court's limiting instruction prior to Sergeant Sampson’s testimony was as follows:
THE COURT:
. Okay. Ladies and gentleman of the jury, from time to time I may give you what's called a limiting instruction to limit the use of evidence. At this time, evidence is being adduced to show that the defendant was involved in the commission of an offense other than the offense for which he’s on trial,.and it is to be considered only for that limited purpose. The sole purpose for which this evidence may be considered is whether it tends to show the defendant's lustful disposition toward young girls or the propensity to sexually assault young girls who are under his care, custody, control, and supervisor [sic].
Always remember the accused is on trial only for the offenses charged. You are not to find him guilty of any offenses that he's charged with merely because he may have committed another offense previously.

. The court’s limiting instruction prior to C.S.'s testimony was as follows:
THE COURT
All right. As previously, ladies and gentlemen of the jury, sometimes evidence of involvement in another act is admissible. Evidence that the defendant was involved in the commission of an offense other than the offense for which he’s on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show in this case the defendant’s ltistful disposition toward young girls or a propensity to sexually assault young girls who are under his care, custody, control, or supervision. Remember, the accused is on trial only for the offense that's charged. You-may not find him guilty of this offense merely because he may have committed another offense previously.